UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
:
DAVID B. NEWMAN and IRA F/B/O DAVID :
NEWMAN-PERSHING LLC as Custodian, on behalf of : 08 Civ. 11215 (LBS)
themselves and all Others Similarly Situated, and :
Derivatively on behalf of FM LOW VOLATILITY FUND, :
L.P., : ECF CASE
:
                              Plaintiffs, :
:
                    v. :
:
FAMILY MANAGEMENT CORPORATION; :
SEYMOUR W. ZISES; ANDREA L. TESSLER; :
ANDOVER ASSOCIATES LLC I; ANDOVER :
ASSOCIATES MANAGEMENT CORP.; BEACON :
ASSOCIATES LLC I; BEACON ASSOCIATES :
MANAGEMENT CORP.; JOEL DANZIGER; HARRIS :
MARKHOFF; IVY ASSET MANAGEMENT CORP.; :
THE BANK OF NEW YORK MELLON :
CORPORATION; MAXAM CAPITAL MANAGEMENT :
LLC; MAXAM CAPITAL GP, LLC; MAXAM CAPITAL :
MANAGEMENT LIMITED; SANDRA MANZKE; and :
JOHN DOES 1-100, :
:
                              Defendants, :
:
and FM LOW VOLATILITY FUND, L.P., :
:
                              Nominal Defendant. :
------------------------------------------------------------------------ X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
IVY ASSET MANAGEMENT LLC'S AND THE BANK OF NEW
<u>YORK MELLON CORPORATION'S MOTION TO DISMISS</u>**


CLEARY GOTTLIEB STEEN & HAMILTON LLP

Lewis J. Liman
Jeffrey A. Rosenthal
One Liberty Plaza
New York, New York 10006
(212) 225-2000
(212) 225-3999 (facsimile)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 3

    POINT I    PLAINTIFFS' NON-DUPLICATIVE CLAIMS SHOULD BE
                DISMISSED ............................................................................................ 3

           A.    Plaintiffs Do Not Plead The Elements of Unjust Enrichment ................... 4

           B.    Plaintiffs Do Not Plead The Elements of Aiding and Abetting
               Breach of Duty ........................................................................................... 5

           C.    Plaintiffs Do Not Plead The Elements of Malpractice and
               Professional Negligence ............................................................................ 7

    POINT II    THE DUPLICATIVE DERIVATIVE CLAIMS SHOULD BE
                DISMISSED ............................................................................................ 9

           A.    Plaintiffs Do Not Have Standing to Pursue Claims on the LVF's
               Behalf ......................................................................................................... 9

           B.    Certain of the Derivative Claims that Plaintiffs Would Have the
               LVF Pursue are Derivative of the Beacon and Andover Funds ............... 13

CONCLUSION .................................................................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

Bartfield v. Murphy,
578 F. Supp. 2d 638 (S.D.N.Y. 2008) .................................................................... 15

Musalli Factory for Gold & Jewelry v. J.P. Morgan Chase Bank,
No. 08 Civ. 1720 (LAP), 2009 WL 860635 (S.D.N.Y. Mar. 31, 2009) .............................. 7

Pension Committee of the University of Montreal Pension Plan v.
Banc of America Securities, LLC,
592 F. Supp. 2d 608 (S.D.N.Y. 2009) .................................................................... 8

Smartix International Corp. v. MasterCard International, LLC,
355 F. App'x 464 (2d Cir. 2009) ........................................................................... 8-9

Stephenson v. Citco Group Ltd.,
No. 09 CV 00716 (RJH), 2010 WL 1244007 (S.D.N.Y. Apr. 1, 2010) .......................... 14

Weber v. King,
110 F. Supp. 2d 124 (E.D.N.Y. 2000) .................................................................. 15

Wright v. Ernst & Young LLP,
152 F.3d 169 (2d Cir. 1998) ................................................................................ 2


**State Cases**

Baker v. Andover Associates Management Corp.,
No. 6179/09, Slip Op. (N.Y. Sup. Ct. Westchester County Nov. 30, 2009) .................. 7, 14

Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,
833 A.2d 961 (Del. Ch. 2003) .............................................................................. 10

Billings v. Bridgepoint,
863 N.Y.S.2d 591 (N.Y. Sup. Ct. Erie County 2008) ................................................ 14

Brasseur v. Speranza,
21 A.D.3d 297 (1st Dep't 2005) ............................................................................ 5

Credit Alliance Corp. v. Arthur Andersen & Co.,
65 N.Y.2d 536 (1985) ......................................................................................... 7

Evans v. Perl,
862 N.Y.S.2d 814 (Sup. Ct. N.Y. County 2008) ..................................................... 14

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

Hecht v. Andover Associates Management Corp.,
No. 006110/2009, 2010 WL 1254546 (Sup. Ct. Nassau County Mar. 12, 2010)............... 12

Heineman v. Datapoint Corp.,
611 A.2d 950 (Del. 1992) ........................................................................................ 11

In re Citigroup Inc. Shareholder Derivative Litigation,
964 A.2d 106 (Del. Ch. 2009)................................................................................... 10

Kaufman v. Cohen,
760 N.Y.S.2d 157 (1st Dep't 2003) .......................................................................... 7

O'Neill v. Warburg, Pincus & Co.,
833 N.Y.S.2d 461 (1st Dep't 2007) .......................................................................... 15

Rales v. Blasband,
634 A.2d 927 (Del. 1993) ........................................................................................ 9

Retirement Program for the Employees of the Town of Fairfield v. Madoff,
No. X05CV095011561S, 2010 WL 2106654 (Conn. Sup. Ct. Apr. 16, 2010) .................. 13, 16

Ryan v. Gifford,
918 A.2d 341 (Del. Ch. 2007)................................................................................... 9

Simon v. Becherer,
7 A.D.3d 66 (1st Dep't 2004) ................................................................................... 9

Spiegel v. Buntrock,
571 A.2d 767 (Del. 1990) ........................................................................................ 10

Tzolis v. Wolff,
10 N.Y.3d 100 (2008) .............................................................................................. 13

White v. Panic,
783 A.2d 543 (Del. 2001) ........................................................................................ 10

Yaw v. Talley,
Civ. A. No. 12882, 1994 WL 89019 (Del. Ch. Mar. 2, 1994) .......................................... 11

**Rules**

Fed. R. Civ P. 23(c)(2) ................................................................................................ 4

Ivy Asset Management LLC ("Ivy")[1] and The Bank of New York Mellon Corporation ("BNY Mellon," and, together with Ivy, the "Ivy Defendants") hereby submit this Reply Memorandum of Law in further support of their Motion to Dismiss the Second Amended Class Action and Derivative Complaint (the "SAC," Decl.[2] Ex. A) filed by David B. Newman and IRA F/B/O David Newman-Pershing LLC as Custodian (together "Plaintiffs").

## PRELIMINARY STATEMENT

In their Opposition, Plaintiffs do not dispute any of the central facts that require dismissal of their non-duplicative claims – in particular their direct claims for unjust enrichment (Count VII), aiding and abetting Family Management Corporation ("FMC")'s breach of fiduciary duty to them (Count IX) and their derivative claim on behalf of the FM Low Volatility Fund (the "LVF") for malpractice and professional negligence (Count XVIII).

The central, and dispositive facts, are that:

- Ivy did not have any relationship with Plaintiffs, who are investors in the LVF, and did not owe any duties to either Plaintiffs or the LVF; and

- Ivy was not enriched by Plaintiffs because any fees that it was paid that were in any way related to Plaintiffs were paid by Beacon Associates Management Corp. ("BAMC") and Andover Associates Management Corp. ("AAMC") for services provided to BAMC and AAMC pursuant to contracts with BAMC and AAMC.

Those central facts require dismissal of all three of Plaintiffs' non-duplicative claims. Plaintiffs' only relationship with Ivy is alleged to have been that they invested in a fund (the LVF) that, in turn, invested in funds (the Beacon and Andover Funds) that, in turn, were managed by managers (AAMC and BAMC) that, in turn, retained Ivy as a service provider. That attenuated chain of relationships cannot support liability under New York or any other law.

---

[1]   Ivy Asset Management LLC is the corporate successor of named defendant Ivy Asset Management Corp.

[2]   "Declaration" or "Decl." refers to the Declaration of Lewis J. Liman, dated April 2, 2010, which accompanied DE 119, Memorandum of Law in Support of Ivy Asset Management LLC's and the Bank of New York Mellon Corporation's Motion to Dismiss, filed April 2, 2010, referred to herein as "Ivy Opening Mem."

Plaintiffs also do not dispute the facts that require dismissal of the seven duplicative claims that are already being prosecuted on behalf of the LVF in <u>In re Beacon Associates Litigation</u>, No. 09 Civ. 00777 (LBS) (S.D.N.Y. filed Jan. 22, 2009).[3] Those claims will be dismissed, pursuant to the parties' stipulation, if the Court grants the Ivy Defendants' pending motion to dismiss in the <u>In re Beacon</u> case.[4] But even were that motion not granted, Plaintiffs have not pled a basis for allowing them to pursue these claims independently. Indeed, because the managing member of the LVF (FMC) is independent of Ivy and BNY Mellon, it is entirely capable of making its own decision whether or not to pursue a case against Ivy when and if the time comes to consider opting out of the class in <u>In re Beacon</u>, if such a class is ever certified.[5] Plaintiffs have offered no basis to strip FMC of that authority and responsibility now.

Finally, as if to accentuate the weaknesses of their SAC, Plaintiffs rely disproportionately on a complaint that they did not file and on allegations that they did not make – the New York Attorney General's complaint ("NYAG Complaint") accusing Ivy of making misrepresentations and omissions to BAMC and AAMC. (<u>See</u> Opp'n[6] at 1-5.) Ivy will respond to the NYAG Complaint in the forum in which it was filed – the New York State Supreme Court. But it is black-letter law that Plaintiffs here cannot amend their pleadings by referring in an opposition brief to a complaint filed by another party in another court. <u>See, e.g.</u>, <u>Wright v. Ernst & Young LLP</u>, 152 F.3d 169, 178 (2d Cir. 1998) ("[A] party is not entitled to amend its

---

[3] The duplicative claims are those for violations of Section 10(b) and 20(a) of the Exchange Act (Counts XI and XII) and for common law fraud (Count XIII), negligent misrepresentation (Count XIV), breach of fiduciary duty (XV), gross negligence and mismanagement (Count XVI), and unjust enrichment (Count XVII).

[4] <u>See</u> DE 116, Stipulation and (Proposed) Order (Mar. 29, 2010).

[5] Under Fed. R. Civ P. 23(c)(2), were the class ultimately certified, the Court would direct notice to class members informing them that the Court would exclude from the class any member that requested exclusion. At that point, the LVF – were it to so determine – could request exclusion and pursue an individual action. That point, however, has not arrived and there has thus been no occasion for the LVF to determine whether it would want to be excluded.

[6] "Opp'n" refers to DE 139, Plaintiffs' Opposition to Ivy Asset Management LLC's and the Bank of New York Mellon Corporation's Motion to Dismiss, filed June 1, 2010.

complaint through statements made in motion papers.") (citing ITT v. Cornfeld, 619 F.2d 909, 914 & n.6 (2d Cir. 1980)).[7] Thus, Plaintiffs' reliance on the NYAG's allegations should be disregarded. Moreover, even were these allegations properly part of this case, they would not give rise to a claim against Ivy that Ivy somehow knew and participated in FMC's alleged breach of duty or that the LVF's managing member cannot consider whether to bring its own claim against Ivy or to remain a member of the putative Beacon class.

## ARGUMENT

## POINT I

## PLAINTIFFS' NON-DUPLICATIVE CLAIMS SHOULD BE DISMISSED

Plaintiffs offer nothing new in response to the argument that all three non-duplicative claims (for unjust enrichment, aiding and abetting breach of duty, and malpractice and professional negligence) are preempted by the Martin Act.[8] In brief, Plaintiffs would have this Court ignore its own precedent as well as the rulings of every federal court that has looked at the issue in the context of claims involving Madoff feeder funds.[9] Preemption aside, Plaintiffs fail to allege the essential elements of each of their non-duplicative claims.

---

[7] See also RSM Prod. Corp. v. Fridman, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) ("Second Circuit case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial."); In re Merrill Lynch & Co. Research Reports Sec. Litig., 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (striking references to SEC and NASD complaints in securities action); Lipsky v. CommonWealth United Corp., 551 F.2d 887, 894 (2d Cir. 1976) (holding a complaint filed by the SEC to be "immaterial" in a related civil action).

[8] As to the Martin Act, Plaintiffs rely on their Omnibus Opposition Memorandum (i.e., DE 125, Plaintiffs' Omnibus Opposition to Defendants' Motion to Dismiss, filed April 19, 2010 ("Omnibus Opp'n Mem.")) (Opp'n at 15) and, in reply, Ivy incorporates the Martin Act portions of its opening (pages 47-50) and reply (pages 50-53) memoranda in support of its motion to dismiss in In re Beacon (DEs 88 and 118, respectively).

[9] See Barron v. Igolnikov, No. 09 Civ. 4471 (TPG), 2010 WL 882890, at *5 (S.D.N.Y. Mar. 10, 2010); Stephenson v. Citco Group Ltd., No. 09 CV 00716 (RJH), 2010 WL 1244007, at *13 (S.D.N.Y. Apr. 1, 2010) ("This is not the only court dealing with state law claims related to the Madoff fraud to recently so find."); In re Tremont Secs. Law, State Law & Ins. Litig., No. 09 MD 2052 (TPG), 2010 WL 1257580, at *7 (S.D.N.Y. Mar. 30, 2010) ("Plaintiffs' non-fraud claims plainly fall within the ambit of the Martin Act."); Meridian Horizon Fund, L.P. v. Tremont Group Holdings, Inc., No. 09 Civ. 3708 (TPG), 2010 WL 1257567, at *8 (S.D.N.Y. Mar. 31, 2010) (same).

### A. Plaintiffs Do Not Plead The Elements of Unjust Enrichment

Plaintiffs' only proffered basis for their unjust enrichment claims is that "Plaintiffs paid fees for management and administration to FMC as a percentage of their holdings in the Fund, and FMC [sic] [paid] some of that money toward the management fees charged by Beacon and Andover Management, and the Administration fees charged to the Beacon and Andover Funds, which, in turn, was paid to Ivy." (Opp'n at 22.) Regardless of whether Plaintiffs have stated a claim for unjust enrichment against FMC (the party that they or the LVF paid and the party they claimed breached duties owed directly to them), those allegations do not state a claim for unjust enrichment against Ivy or BNY Mellon.

First, as Ivy demonstrated in its Opening Memorandum, because Ivy's fees were paid under a contract, there can be no claim for unjust enrichment. (See Ivy Opening Mem. at 18-19 (citing cases).)[10] Second, neither Plaintiffs nor the LVF paid any fees to Ivy, precluding any recovery on an unjust enrichment theory. (See Ivy Opening Mem. at 17-18.)[11] Third, BNY Mellon received no fees at all and cannot be subject to an unjust enrichment claim even were Ivy subject to one.

### B. Plaintiffs Do Not Plead The Elements of Aiding and Abetting Breach of Duty

Plaintiffs assert that FMC breached its duty toward them "by issuing false and misleading statements about the investment strategies of Andover, Beacon, and Maxam funds"

---

[10] See, e.g., Law Debenture v. Maverick Tube Corp., No. 06 Civ. 14320 (RJS), 2008 WL 4615896, at *12 (S.D.N.Y. Oct. 15, 2008) ("[T]he existence of a valid and binding contract governing the subject matter at issue in a particular case does act to preclude a claim for unjust enrichment even against a third party non-signatory to the agreement."), aff'd, 595 F.3d 458 (2d Cir. 2010).

[11] Plaintiffs mistakenly rely on Green v. Beer, No. 06 Civ. 4156 (KMW), 2009 WL 911015 (S.D.N.Y. Mar. 31, 2009). In Green, the intermediate entity to which the fees were paid was a sham controlled by the defendant (unlike here where Ivy did not control any of the numerous intermediary entities – BAMC, AAMC, the Beacon Fund, the Andover Fund and the LVF) and the transaction was "without economic substance" and "designed principally to reap large fees from Plaintiffs." See Green v. Beer, No. 06 Civ. 4156 (KMW), 2007 WL 576089, at *1 (S.D.N.Y. Feb. 22, 2007). Nothing of the sort is alleged here. Rather, BAMC and AAMC paid Ivy's fees, not the LVF or Plaintiffs. Allegations that these entities funded their payment of fees from fees they received from fund assets or fees received from the funds are far too attenuated to provide a basis for an unjust enrichment claim against Ivy. Otherwise there would be no limit to potential liability on downstream parties and individuals.

and failing to disclose that assets in those funds were being invested in Madoff without any or with inadequate due diligence. (SAC ¶¶ 295-96.) Even assuming Plaintiffs have validly pled a claim against FMC, Plaintiffs do not allege that Ivy knew anything about what FMC was saying to its investors or what diligence FMC did, or did not do, on Andover, Beacon and Maxam or on Madoff. (See Ivy Opening Mem. at 14-16.) Plaintiffs also do not allege that Ivy took any action that substantially assisted FMC in its alleged breach of duty to Plaintiffs. (Id. at 16-18.)

Plaintiffs' only response is to assert that their allegations support an inference that Ivy "knew that the FM Fund was investing in those funds, knew that FMC was FM Fund's general partner …, and knew that the FM Fund was a limited partnership which itself had investors." (Opp'n at 18.) Plaintiffs then leap from those allegations to the naked assertion that "because Ivy and the Andover-Beacon Defendants knew they could not perform the requisite due diligence on Madoff, due to his secretiveness, and ignored the known red flags concerning Madoff's operations …, they knew that FMC was not performing its own due diligence and monitoring." (Id.)

Plaintiffs' rank speculation does not raise the inference that Ivy had "actual knowledge" of FMC's breach, a required element of their claim. See, e.g., Brasseur v. Speranza, 21 A.D.3d 297, 299 (1st Dep't 2005) ("[A] plaintiff must allege that the defendant had actual knowledge of the breach of duty.").[12] Indeed, Plaintiffs' only assertion of what Ivy actually knew about FMC was that it filled out the paperwork for the LVF's investment in Beacon and Andover – an assertion that plainly does not give rise to an inference that Ivy "knew" that FMC

---

[12] Plaintiffs are mistaken in relying on Judge Scheindlin's decision in Pension Committee of University of Montreal Pension Plan v. Banc of America Securities LLC, No. 05 Civ. 9016 (SAS), 2007 WL 528703, at *7 (S.D.N.Y. Feb. 20, 2007), vac'd on other grounds, 568 F.3d 374 (2d Cir. 2009). That case turned on specific allegations of the suspect facts that the Citco Defendants actually knew about the party in FMC's position. See id. ("[T]he circumstantial evidence giving rise to [the] inference of knowledge are the series of 'red flags' that the Citco Defendants allegedly ignored, as well as the various emails and correspondence quoted in the SAC.") Nothing of the sort is pled here.

5

was breaching a fiduciary duty to investors in the LVF like Plaintiffs. Nor could such an inference be drawn – the paragraphs that Plaintiffs cite allege that "[n]umerous private entities conducted basic due diligence of Madoff's operations." (SAC ¶ 90.) Thus, regardless of whether Plaintiffs' claim is better understood as alleging that FMC failed to monitor Beacon or Andover or that it failed to conduct diligence on Madoff, it does not follow from the assertion that Ivy failed to conduct adequate diligence that Ivy knew that FMC failed to conduct adequate diligence. In fact, the Court can take notice that numerous entities conducted diligence of Madoff without discovering his fraud. The fact that these entities did not uncover the fraud is not a function of the failure to conduct diligence at all (as Plaintiffs would have the Court believe) but of the lengths to which Madoff went to conceal his illegal conduct as both he and his lieutenants have since admitted.[13]

Plaintiffs also fail to allege that Ivy "substantially participated" in FMC's alleged breach:

- Plaintiffs baldly assert, without any citation to the SAC, that "the relationship of [Ivy's former president] Larry Simon with Madoff was the only reason that FMC got access to Madoff through Beacon and Andover" (Opp'n at 19). But, in addition to not being based on pled facts, this assertion is fatally undermined by Plaintiffs' own allegations that FMC also "got access to Madoff" through the Maxam Fund, with which neither Ivy nor its former CEO Lawrence Simon is alleged to have had any involvement. (See SAC ¶¶ 10, 36, 81.) Nor is there any allegation that Mr. Simon's "relationship" amounted to participation in any wrongdoing.

- Plaintiffs also argue that "Ivy and the Andover-Beacon Defendants … issu[ed] false statements on which FMC could rely, in an attempt to claim that FMC was relying on Ivy and the Andover Beacon Defendants to conduct due diligence on Madoff" (Opp'n at 19 (citing SAC ¶¶ 153, 159, 167)). But the "false statements" cited are all statements by BAMC or AAMC (not by Ivy) in the Beacon and Andover Offering Funds, and, in any event, this allegation falls of its own weight: if (as Plaintiffs' allege) BAMC and AAMC lied to FMC about their diligence in

---

[13] As noted above, Plaintiffs improperly seek to amend their complaint in their briefing by relying on the NYAG Complaint. (Opp'n at 20.) See supra n.7 and accompanying text. Even were such allegations credited, they would establish that Ivy was able to conduct due diligence and thereby would fully refute Plaintiffs' premise that Ivy knew that FMC would be unable to conduct diligence based on its own inability to conduct due diligence.

6

the offering materials, and FMC was justified in relying on others to fulfill its due diligence obligation, then FMC cannot be said to have knowingly lied to its investors about diligence. Plaintiffs cannot have it both ways.

- Finally, Plaintiffs argue that Ivy substantially assisted FMC's alleged breach by failing to disclose to Plaintiffs its "concerns about Madoff." (Opp'n at 20.) But there is no allegation as to how Ivy's alleged failure to volunteer its views about Madoff to Beacon and Andover's underlying investors could somehow have aided and abetted FMC's breach; and inaction does not constitute substantial assistance in the absence of an affirmative duty to act, which is not alleged here. See, e.g., Musalli Factory for Gold & Jewelry v. J.P. Morgan Chase Bank, No. 08 Civ. 1720 (LAP), 2009 WL 860635, at *10 (S.D.N.Y. Mar. 31, 2009); see also, Baker v. Andover Assocs. Mgmt. Corp., No. 6179/09, Slip Op. at 31 (N.Y. Sup. Ct. Westchester County Nov. 30, 2009) (Decl. Ex. F) (holding that Ivy had no fiduciary or other relevant duty to investors in Andover Fund); Kaufman v. Cohen, 760 N.Y.S.2d 157, 170 (1st Dep't 2003).[14]

### C. Plaintiffs Do Not Plead The Elements of Malpractice and Professional Negligence

Plaintiffs' entire response to the Ivy Defendants' argument that Ivy did not owe the LVF a professional duty is to state that "[a]dequate relationships between parties not in direct privity may exist where … third parties reasonably rely on statements about services to be provided by professionals." (Opp'n at 24.) Thus, in essence, Plaintiffs admit that: (1) LVF did not enjoy a relationship of privity with Ivy; (2) Ivy did not make any statements to LVF or take any other action – any statements were made by others "about services to be provided" by Ivy; and (3) Ivy did not take any other action to evince its understanding of LVF's reliance on any statements made about Ivy.

Plaintiffs' argument is undermined by the very cases it cites. In Credit Alliance Corp. v. Arthur Andersen & Co., 65 N.Y.2d 536 (1985), the New York Court of Appeals rejected the allegation that a duty existed. It held that a professional owes a duty of care to a third party with respect to statements made by that professional only when: "(1) the

---

[14] Plaintiffs' remarkable contention that Ivy – regardless of the lack of relationship between it and Plaintiffs – "had a duty to act once [it was] put on notice of the FMC Defendants' breaches" (Opp'n at 22), is incorrect. Indeed, the case that Plaintiffs miscite for this point, Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 284 (2d Cir. 1992), did not involve a common-law aiding and abetting claim and, in any event, has since been abrogated. See Gerosa v. Savasta & Co., 329 F.3d 317, 322-23 (2d Cir. 2003)).

7

[professional] [was] aware that the [statements] were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there [was] some conduct on the part of the [professional] linking them to that party or parties, which evinces the [professional's] understanding of that party or parties' reliance." Id. at 551.[15]

Plaintiffs' claim fails every element of this standard: Plaintiffs do not allege that Ivy made any statements to the LVF, that it was aware that any statements it made would be provided to the LVF,[16] that it intended the LVF to rely on any of its statements, or that it took any action at all linking it to the LVF.

Finally, even assuming the existence of a duty, Plaintiffs' effort to evade the holding in Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC, 592 F. Supp. 2d 608 (S.D.N.Y. 2009) – that fund administrators are not professionals for these purposes – on the basis that the decision there was at summary judgment, fails. Here, Plaintiffs have failed to allege any of the requirements, the failure to offer proof of which in Pension Committee required summary judgment: "the requirements of 'extensive formal learning and training, licensure and regulation[], a code of conduct imposing standards beyond those accepted in the marketplace and a system of discipline for violation of those standards' with respect to administrators." Id. at 642 (quoting Chase Scientific Research Inc. v. NIA Group, Inc., 96 N.Y.2d 20, 29 (2001) (holding that insurance agents and brokers are not professionals for these purposes)). Dismissal at the threshold is therefore required. See, e.g.,

---

[15] In Prudential Insurance Co. v. Dewey, Ballantine, Bushby, Palmer & Wood, 80 N.Y.2d 377 (1992), one of the inapposite cases on which Plaintiffs rely, the law firm defendant was accused of malpractice for preparing a faulty opinion letter and sending it directly to the plaintiff. The Court contrasted the situation there to the situation in Credit Alliance, in which it found no relationship approaching privity (and therefore no claim for malpractice and professional negligence) because, in Credit Alliance, as here, "there were no direct dealings between the plaintiffs and defendants, no specific agreement by the defendants to prepare the report for the plaintiffs' use or according to the plaintiffs' requirements, no specific promise to provide the plaintiffs with a copy of the report, and no actual provision of the report to the plaintiffs by the defendants." 80 N.Y.2d at 383.

[16] Indeed, Ivy's contracts expressly disclaimed the intention to "create rights in any person or entity" and provided that "no person or entity shall be justified in relying on any provision of this Agreement." (See CAs, Decl. Ex. B, C, § 6.)

8

Smartix Int'l Corp. v. MasterCard Int'l, LLC, 355 F. App'x 464, 466 (2d Cir. 2009) ("To survive a motion to dismiss, a plaintiff must sufficiently plead each of the[] elements to meet the standards set forth in Twombly and Iqbal.").

## POINT II

## THE DUPLICATIVE DERIVATIVE CLAIMS SHOULD BE DISMISSED

Plaintiffs' seven derivative claims – each of which is already being asserted on the LVF's behalf in In re Beacon – should be dismissed for the reasons stated in the Ivy Defendants' motion to dismiss in that case. Indeed, Plaintiffs have stipulated that the ruling in that case will apply here as well. Even if the claims in that case are sustained, however, Plaintiffs should not be permitted to pursue the duplicative claims here because their opposition fails to establish standing.

### A.    Plaintiffs Do Not Have Standing to Pursue Claims on the LVF's Behalf

Plaintiffs do not dispute the governing Delaware law that demand would be excused here only if they are able to plead "particularized facts creat[ing] a reason to doubt that a majority of the directors would have been independent and disinterested in considering the demand," Ryan v. Gifford, 918 A.2d 341, 355 (Del. Ch. 2007); Simon v. Becherer, 7 A.D.3d 66, 72 (1st Dep't 2004), and that the relevant test is "whether the board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations." Rales v. Blasband, 634 A.2d 927, 933 (Del. 1993). (See also Ivy Opening Mem. at 8-9.) Plaintiffs' response as to why they should be allowed to bring claims on behalf of the LVF that are already being asserted on the LVF's behalf consists of two easily refuted propositions.

First, Plaintiffs argue in essence that the Court need not consider at all whether the managing member of the LVF (FMC) would be disinterested in suing Ivy because demand is

9

"considered as of the time of the filing of the <u>initial</u> complaint" (Opp'n at 6) and Plaintiffs chose not to name Ivy in the initial complaint.  Delaware law does not permit such gamesmanship.  The decision whether or not, and how, to assert a potential claim is an asset of the corporation's control, which (like other assets) is vested in its board (or LLC managers) absent a situation where the board cannot assert that claim in a disinterested fashion.  <u>White v. Panic</u>, 783 A.2d 543, 550 n.18 (Del. 2001) ("The directors of a corporation and not its shareholders manage the business and affairs of the corporation … and, accordingly, the directors are responsible for deciding whether to engage in derivative litigation.") (quoting <u>Levine v. Smith</u>, 59 A.2d 194, 200 (Del. 1991)); <u>Spiegel v. Buntrock</u>, 571 A.2d 767, 773 (Del. 1990) ("The decision to bring a law suit or refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation.  Consequently, such decisions are part of the responsibility of the board of directors."); <u>In re Citigroup Inc. S'holder Deriv. Litig.</u>, 964 A.2d 106, 120 (Del. Ch. 2009) ("The decision whether to initiate or pursue a lawsuit on behalf of the corporation is generally within the power and responsibility of the board of directors.").  Plaintiffs cannot deprive the board of its right to make the assessment of whether and how to best assert a claim in the best interests of all of its shareholders by the mere contrivance of omitting a defendant from its initial pleading.  See, e.g., <u>Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart</u>, 833 A.2d 961, 977 & n.48 (Del. Ch. 2003) ("Demand futility analysis is conducted on a claim-by-claim basis."); <u>Yaw v. Talley</u>, Civ. A. No. 12882, 1994 WL 89019, at *9 (Del. Ch. Mar. 2, 1994) (a plaintiff seeking to bring a derivative claim is required to "demonstrate that a demand would have been futile as to each … claim") (internal citation omitted); <u>Heineman v. Datapoint Corp.</u>, 611 A.2d 950, 952-53 (Del. 1992) ("[Plaintiff's] amended complaint refers to four separate transactions ….  We address them separately.").[17]

---

[17] Plaintiffs' reliance on <u>Rales v. Blasband</u>, 634 A.2d 927, 935 (Del. 1993) (Opp'n at 6-7) to support their

Second, Plaintiffs argue that the Ryan standard is satisfied and the LVF's managing member must be divested of its power to make a decision about this litigation because "[i]f Ivy were found to have failed in its responsibilities with respect to the Beacon and Andover funds, that could be used to show that FMC breached its own duties to the FM Fund and its limited partners with respect to performing due diligence on the funds with which the FM Fund placed its investors' money" and "FMC has an interest in protecting Ivy from claims for aiding and abetting FMC's breaches of fiduciary duty because if it is shown that Ivy failed to exercise due diligence in a way that should have been known to FMC, that would tend to establish that FMC had breached its own fiduciary duty to the FM Fund." (Opp'n at 8.) Not surprisingly, none of these claims is mentioned in any of the allegations of the SAC regarding demand futility, none of which even mentions Ivy. (See SAC ¶¶ 58-69.) The Court should hold that demand futility is not established for that reason alone.

Moreover, Plaintiffs do not allege that "Ivy failed to exercise due diligence in a way that should have been known to FMC" (Opp'n at 8) or, for that matter, any other particularized facts that would disable FMC from making a disinterested decision as to whether to bring a direct claim against Ivy. Nor do they allege any other way in which any default on Ivy's part would tend to establish that FMC was complicit in a breach of duty from them, as opposed to establishing an extenuating fact excusing or mitigating any default by FMC. Indeed, Plaintiffs' newfound direct aiding and abetting claim is based on the disputed assertion that Ivy omitted to state facts to BAMC and AAMC that it was required to disclose. (See Opp'n at 20-

---

argument is misplaced because in Rales the plaintiffs did not assert claims against any new defendants in their amended complaint. Likewise, Plaintiffs' citation to cases, such as Braddock v. Zimmerman, 906 A.2d 776, 786 (Del. 2006) and Harris v. Carter, 582 A.2d 222 (Del. Ch. 1990), which concern the standing analysis applicable upon the appointment of a new board of directors, underscores the Ivy Defendants' point. In Braddock, the court held that where a new board has been empanelled, demand futility needs to be considered at the time of the filing of the amended complaint, but only as to "derivative claims in the amended complaint that are not already validly in litigation." 906 A.2d at 786; accord Harris, 582 A.2d at 230. The court did not state that those were the only circumstances where that rule would apply or that the rule would not apply in the analogous circumstances here, where new claims have been asserted against new parties that were not previously "validly in litigation."

21.) To the extent a claim of that nature could exist (i.e., a claim that Ivy owed duties to participants in the Beacon and Andover Funds), it would be a direct claim by investors in those funds, not a claim by investors in those investors like Plaintiffs.  See also infra Point II.B.

It is thus not surprising that Plaintiffs cite no authority, and the Ivy Defendants are aware of none, that would permit them to pursue here through derivative claims the identical claims being pursued by the putative class in In re Beacon.[18]  There is no reason why, in effect, two sets of lawyers should be allowed to assert the same claims on behalf of the same party – an arrangement that can only lead to the duplication of effort and corresponding multiplication of fees, all to the detriment of the LVF, as well as the waste of judicial and party resources.[19]  Instead, they misleadingly cite Hecht v. Andover Associates Management Corp., No. 006110/2009, 2010 WL 1254546 (Sup. Ct. Nassau County Mar. 12, 2010) (see Opp'n at 7-8).  In Hecht, the issue was whether an investor in the Andover Fund could bring a derivative suit on behalf of the Andover Fund without making demand on AAMC, not, as here, whether an investor in an entity that invested in the Andover Fund (such as Plaintiffs) could sue on behalf of the upstream fund in which it invested (i.e., the LVF) without making demand on that fund's management.  Ivy, of course, had a contractual relationship with AAMC, in sharp contrast to the lack of any alleged relationship between Ivy and FMC.

---

[18] Plaintiffs are simply wrong that "there are no claims asserted on behalf of the [LVF] in Beacon" (Opp'n at 10).  The LVF is a member of the putative class in In re Beacon and this Court has directed lead counsel in In re Beacon to assert "all federal and state law claims on behalf of the class" of investors in In re Beacon.  See DE 50, Order Consolidating Actions, Appointing Lead Plaintiff and Appointing Lead Counsel (May 13, 2009).  Allowing Plaintiffs to proceed on parallel tracks here would be to permit an end run around the Court's order.  Indeed, it is ironic that Plaintiffs here essentially seek to have the LVF opt out of In re Beacon so that the same claims can be litigated by the Wolf Haldenstein firm, which is also a participating counsel in In re Beacon.

[19] The fact that the Ivy Defendants have not moved to consolidate this case with In re Beacon (Opp'n at 12) is of no moment.  The Ivy Defendants were not parties to this case when it was filed in December 2008, nor were they parties to this case when the Court appointed Lead Plaintiffs on March 3, 2009, or on May 13, 2009 when the Court entered its consolidation order in In re Beacon.  Instead of formally moving for consolidation when the Ivy Defendants were added to the case in January 2010, the Ivy Defendants conferred with Plaintiffs and entered into the stipulation discussed above, which this Court so-ordered on March 29, 2010.  The stipulation achieved the same basic efficiencies as formal consolidation would have for this stage of the litigation.  The Ivy Defendants reserve all rights to move for consolidation in the future.

## B. Certain of the Derivative Claims that Plaintiffs Would Have the LVF Pursue are Derivative of the Beacon and Andover Funds

Putting aside the lack of demand futility, the derivative claims that Plaintiffs propose that do not involve inducing the LVF to invest in the Beacon and Andover Funds (i.e., their state law claims other than Counts IX and XIII) are themselves derivative of the Beacon and Andover Funds because they relate to injuries allegedly suffered by the funds, not directly by Plaintiffs or the LVF. See, e.g., Ret. Program for the Emps. of the Town of Fairfield v. Madoff, No. X05CV095011561S, 2010 WL 2106654, at *9-15 (Conn. Sup. Ct. Apr. 16, 2010) (distinguishing between parties that solicited investors to invest in Madoff feeder fund from parties that provided services to the fund and holding that claims against the latter were derivative of the fund to which the services were provided). These claims therefore cannot be maintained by the LVF even if Plaintiffs had standing to assert the LVF's claims, which they do not. Rather, any such claims belong to those funds, not investors in those funds like the LVF.

Plaintiffs' only response is to argue that the usual derivative standing rules "should not apply in the context of LLCs like Beacon and Andover." (Opp'n at 13.) This is plainly incorrect. Indeed, when the New York Court of Appeals held in 2008 that members of an LLC could sue derivatively, it rejected the very proposition that Plaintiffs advance here: "Substituting direct remedies of LLC members for the old-fashioned derivative suit – a substitution not suggested by anything in the language of the Limited Liability Company Law – raises unanswered questions …. [W]e will not readily conclude that the Legislature intended to set us on this uncharted path." Tzolis v. Wolff, 10 N.Y.3d 100, 106 (2008).[20]

---

[20] Plaintiffs wrongly rely on two superceded Delaware Chancery Court decisions applying Delaware law – In re Cencom Cable Income Partners, L.P. Litigation, No. 14634, 2000 WL 130629, at *1 (Del. Ch. Jan. 27, 2000) and Anglo American Security Fund, L.P. v. S.R. Global International Fund, L.P., 829 A.2d 143 (Del. Ch. 2003) – for the proposition that derivative claims with respect to a limited partnership may be brought directly where all non-defendant partners in the resulting litigation constitute a uniform class of limited partners. (Opp'n at 13-14.) These cases are no longer good law either in the jurisdiction to which they were applicable (Delaware) or in the Second Circuit. Rather, in Tooley v. Donaldson, Lufkin & Jenerette, Inc., the Delaware Supreme Court held that "the law to

Counts XIV through XVIII thus should be dismissed for the same reasons that the Court in Baker, Slip Op. at 18 (Decl. Ex. F) determined that similar claims brought by Andover investors were derivative and dismissed them. There, notwithstanding Plaintiffs' efforts to argue otherwise, the Court held the claims were derivative because "[i]t is obvious that these claims are not unique to her; they arise solely by virtue of her investment in the Andover fund as a participating member and do not arise by reason of breach of any duty claimed to be owed uniquely to Plaintiff." Id.; see also Stephenson v. Citco Group Ltd., No. 09 CV 00716 (RJH), 2010 WL 1244007, at *8-9 (S.D.N.Y. Apr. 1, 2010) (dismissing claims by investors in feeder fund that suffered Madoff-related losses because claims were derivative of the fund); Evans v. Perl, 862 N.Y.S.2d 814 (Sup. Ct. N.Y. Co. 2008) ("The court rejects [plaintiffs'] argument that, as a matter of law, no prior demand is necessary before a derivative action can be brought against an LLC."); Billings v. Bridgepoint, 863 N.Y.S.2d 591, 594 (N.Y. Sup. Ct. Erie County 2008) (in the context of an LLC, holding "[a]s the remedy sought by plaintiff would inure to the benefit of

---

be applied henceforth in determining whether a stockholder's claim is derivative or direct" is whether the plaintiff can show "that he or she can prevail without showing an injury to the corporation." 845 A.2d 1031, 1033, 1039 (Del. 2004) (emphasis added). If the plaintiff cannot make that showing – as Plaintiffs all but concede they cannot here – the claim is derivative. Considerations like those identified in Cencom and Anglo American do not factor into the analysis. Indeed, since Tooley, courts in Delaware, this District, and elsewhere have dismissed claims of LLC members and limited partners on the basis that the claims must be brought derivatively or not at all, including in the context of Madoff feeder funds. See, e.g., Stephenson, 2010 WL 1244007, at *8-9 (applying Tooley to dismiss claims by investors in a feeder fund that suffered Madoff-related losses, holding claims were derivative); San Diego Co. Emps. Ret. Assoc. v. Maounis, No. 07 Civ. 2618 (DAB), 2010 WL 1010012, at *19 (S.D.N.Y. Mar. 15, 2010) (applying Tooley to dismiss gross negligence, breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims against manager of investment LLC, holding that they were derivative of the LLC); Ret. Program for the Emps. of the Town of Fairfield, 2010 WL 2106654, at *9-13 (following Tooley to analyze derivative standing issue as to LLCs and partnerships in Madoff context); Ernst & Young Ltd. Bermuda v. Quinn, No. 09 Civ. 1164 (JCH), 2009 WL 3571573, at *1, 8 (D. Conn. Oct. 26, 2009) (rejecting plaintiffs' reliance upon Anglo American and citing Tooley in holding that claims by limited partners against an investment fund's auditor for failing to reveal that the fund was invested in "a massive Ponzi scheme" were derivative, not direct, because "[u]nder Delaware law, injuries sustained on account of having investment or ownership stake in a corporation that diminishes in value are not individually suffered harms"); Agostino v. Hicks, 845 A.2d 1110, 1125 (Del. Ch. 2004) (holding that "Cencom ... is limited to its own unique set of facts"). Plaintiffs seek to avoid Stephenson with the curious argument that the parties in Stephenson "agreed that Tooley … applied." (See Opp'n at 13 n.7.) Plaintiffs neglect the fact that that the court specifically stated that it also agreed that Tooley applies to claims involving Madoff feeder funds like the ones at issue here. See Stephenson, 2010 WL 1244007, at *7 ("Both parties and the Court agree that Delaware law, specifically the test set forth in Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031 (Del. 2004), controls on this issue.") (emphasis added). Moreover, because Cencom was superceded by Tooley, any reliance placed on it in pre-Tooley cases like Grigsby & Assocs., Inc. v. Rice Derivative Holdings, L.P., No. 00 Civ. 5056 (RO), 2001 WL 1135620 (S.D.N.Y. Sept. 26, 2001), which Plaintiffs cite, is irrelevant.

14

the corporation before any benefit could be rendered to plaintiff and other members, the Court concludes that the second cause of action seeks derivative relief and is not a direct action").[21]

So, too here, the claims at issue "are not unique to [the LVF]; they arise solely by virtue of [LVF's] investment in the Andover fund as a participating member and do not arise by reason of breach of any duty claimed to be owed uniquely to Plaintiff." They should be dismissed for that additional reason. See also Weber v. King, 110 F. Supp. 2d 124, 132 (E.D.N.Y. 2000) (holding "diminution in [the] value of [plaintiffs'] interests" in an LLC to be a derivative injury); O'Neill v. Warburg, Pincus & Co., 833 N.Y.S.2d 461, 462 (1st Dep't 2007) ("[D]iminution of the value of stock holdings is a derivative cause of action belonging to that corporation and not to plaintiffs individually."); Bartfield v. Murphy, 578 F. Supp. 2d 638, 646 (S.D.N.Y. 2008) (where the plaintiff's "injury and claim for relief only accrues because [plaintiff] had an interest in [an LLC]; [its] claim is not 'independent of [its] status as a shareholder, investor, or creditor'") (emphasis omitted); see also Ret. Program for the Emps. of the Town of Fairfield, 2010 WL 2106654, at *1, 9-13 (dismissing similar claims against "defendants who had no direct dealings with the [plaintiffs]" on same basis).

---

[21] The cases on which Plaintiffs rely are inapposite. In Burnett v. Rowzee, No. SA CV 07-641 (DOC), 2007 WL 2735682 (C.D. Cal. Aug. 28, 2007), the Ponzi scheme operator solicited investments in an LLC that it controlled and the plaintiffs sought recovery of their investments from the Ponzi schemers themselves. Here, by contrast, Plaintiffs seek to assert claims based on breach of duties owed (at best) to the LLC, not to Plaintiffs, relating to the assets of the LLC. Indeed, the scenario in the instant case is identical to PacLink Communications, International, Inc. v. Supreme Court, 109 Cal. Rptr. 2d 436, 440-41 (Cal. Ct. App. 2001), where the court held the claims were derivative, and which the court in Burnett distinguished on that basis. Nor do the cases cited by Plaintiffs in their memorandum in opposition to the motion to dismiss the other defendants' claims aid their cause. In Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC, 376 F. Supp. 2d 385 (S.D.N.Y. 2005), Judge Kaplan recognized the default rule that "a shareholder has no individual cause of action" for wrongs against a partnership, id. at 408 (quoting Abrams v. Donati, 66 N.Y.2d 951, 953 (1985)), but held that the plaintiffs' losses resulted from the defendants' communication of false information directly to them in breach of a contractual duty between the manager and the limited partners. See also People ex rel. Cuomo v. Merkin, No. 45087/09, 2010 WL 936208, at *9 (Sup. Ct. N.Y. County Feb. 8, 2010) (holding that misrepresentations about fund to investors could give rise to direct claims in case brought by New York's Attorney General to vindicate a "quasi-sovereign interest"). Plaintiffs make no similar allegations in this case, nor could they because Ivy is not alleged to have been responsible for sending financial information to the LVF, nor did it have any contractual relationship with the LVF of any kind.

## **CONCLUSION**

For the foregoing reasons and the reasons stated in the Ivy Defendants' opening memorandum, Plaintiffs' claims against the Ivy Defendants should be dismissed, with prejudice.

Respectfully Submitted,

Dated: July 23, 2010
       New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: /s/ Lewis J. Liman
    Lewis J. Liman
    Jeffrey A. Rosenthal
    Members of the Firm

One Liberty Plaza
New York, New York 10006
(212) 225-2000
(212) 225-3999 (facsimile)
lliman@cgsh.com
jrosenthal@cgsh.com

*Attorneys for Ivy Asset Management LLC*
*(successor to Defendant Ivy Asset Management Corp.)*
*and The Bank of New York Mellon Corporation.*