UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
: Master File No.:
IN RE: BEACON ASSOCIATES LITIGATION :
This Document Relates To: ALL ACTIONS : 09 Civ. 0777 (LBS)
:
------------------------------------------------------------------------ X
:
DAVID B. NEWMAN and IRA F/B/O DAVID :
NEWMAN-PERSHING LLC as Custodian, on behalf of : 08 Civ. 11215 (LBS)
themselves and all Others Similarly Situated, and :
Derivatively on behalf of FM LOW VOLATILITY FUND, :
L.P., :
:
                Plaintiffs, :
:
                   v. :
:
FAMILY MANAGEMENT CORPORATION; :
SEYMOUR W. ZISES; ANDREA L. TESSLER; :
ANDOVER ASSOCIATES LLC I; ANDOVER :
ASSOCIATES MANAGEMENT CORP.; BEACON :
ASSOCIATES LLC I; BEACON ASSOCIATES :
MANAGEMENT CORP.; JOEL DANZIGER; HARRIS :
MARKHOFF; IVY ASSET MANAGEMENT CORP.; :
THE BANK OF NEW YORK MELLON :
CORPORATION; MAXAM CAPITAL MANAGEMENT :
LLC; MAXAM CAPITAL GP, LLC; MAXAM CAPITAL :
MANAGEMENT LIMITED; SANDRA MANZKE; and :
JOHN DOES 1-100, :
:
                Defendants, :
:
and FM LOW VOLATILITY FUND, L.P., :
:
                Nominal Defendant. :
------------------------------------------------------------------------ X

**IVY ASSET MANAGEMENT LLC'S REPLY MEMORANDUM OF
LAW SUPPORTING ISSUANCE OF A TEMPORARY
RESTRAINING ORDER AND ORDER STAYING DISCOVERY
<u>IN A RELATED CASE PENDING IN NEW YORK STATE COURT</u>**

**TABLE OF CONTENTS**

Page

ARGUMENT ........................................................................................................................ 1

    POINT I     THIS COURT HAS JURISDICTION
                    TO STAY DISCOVERY IN HECHT ....................................................... 1

    POINT II    A STAY IS NECESSARY AND APPROPRIATE .................................... 6

          A.    Hecht, Newman, Sacher and In re Beacon are Highly Related ................. 6

          B.    A Stay Is Necessary And Appropriate To Prevent Circumvention
               of The PSLRA Discovery Stay ................................................................... 9

    POINT III   HECHT'S OBJECTION TO THE TRO IS WITHOUT MERIT ............ 15

CONCLUSION .................................................................................................................. 16

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

Book v. Mortgage Electronic Registration Systems,
   608 F. Supp. 2d 277 (D. Conn. 2009).................................................................... 4

Bridgewater Operating Corp. v. Feldstein,
   346 F.3d 27 (2d Cir. 2003)..................................................................................... 4

Brown v. New York State Supreme Court for the Second Judicial District,
   680 F. Supp. 2d 424 (E.D.N.Y. 2010) ................................................................... 6

Chapman v. ChoiceCare Long Island Term Disability Plan,
   288 F.3d 506 (2d Cir. 2002).................................................................................. 8

Exxon Mobil Corp. v. Saudi Basic Industries Corp.,
   544 U.S. 280 (2005)............................................................................................... 3

Haase v. Gunnallen Financial, Inc.,
   No. 08-10927, 2009 WL 2476099 (E.D. Mich. Aug. 11, 2009)............................ 6-7

Hoblock v. Albany County Board of Elections,
   422 F.3d 77 (2d Cir. 2005)..................................................................................... 3-5

In re Adelphia Communications Corp. Securities & Derivatives Litigation,
   No. 03 MDL 1529 (LMM), 2004 WL 2202586 (S.D.N.Y. Sept. 28, 2004)........... 14

In re Cardinal Health Securities Litigation,
   365 F. Supp. 866 (S.D. Ohio 2005), 365 F. Supp. 2d 875 ................................9, 11, 15, 18

In re Cisco Systems, Inc. Securities Litigation,
   No. C 01-20418 (JW), 2002 WL 32987531 (N.D. Cal. Jan. 30, 2002) .................. 14

In re Crompton Corp.,
   No. 3:03-cv-1293 (EBB), 2005 WL 3797695 (D. Conn. Dec. 14, 2005)..........9, 11, 16, 18

In re Dot Hill Systems Corp. Securities Litigation,
   594 F. Supp. 2d 1150 (S.D. Cal. 2008)................................................................... 11, 16

In re DPL, Inc.,
   285 F. Supp. 2d 1053 (S.D. Ohio 2003) ................................................................ 13

In re DPL Inc. Securities Litigation,
   247 F. Supp. 2d 946 (S.D. Ohio 2003) .................................................................. 12-13

# TABLE OF AUTHORITIES
## (Continued)

|  | Page(s) |
|---|---|
| In re Gilead Sciences Securities Litigation,<br>No. C 03-4999 (MJJ), 2004 WL 3712008 (N.D. Cal. Nov. 22, 2004) | 13-14 |
| In re Regions Morgan Keegan Securities,<br>No. 07 02830, 2010 WL 596444 (W.D. Tenn. Feb. 16, 2010) | 13-14 |
| Lugosch v. Pyramid Co. of Onondaga,<br>435 F.3d 110 (2d Cir. 2006) | 15 |
| McKithen v. Brown,<br>481 F.3d 89 (2d Cir. 2007) | 5-6 |
| Moccio v. New York State Office of Court Administration,<br>95 F.3d 195 (2d Cir. 1996) | 4 |
| Newby v. Enron Corp.,<br>338 F.3d 467 (5th Cir. 2003) | 11 |

**State Cases**

| | |
|---|---|
| L.K. Station Group LLC v. Quantek Media, LLC,<br>872 N.Y.S.2d 691 (Sup. Ct. N.Y. County Aug. 7, 2008) | 15 |
| Mancheski v. Gabelli Group Capital Partners,<br>39 A.D.3d 499 (2d Dep't 2007) | 15 |

**Rules and Statutes**

| | |
|---|---|
| 78 U.S.C. § 78u-4(b)(3)(D) | 11 |
| Fed. R. Evid. 411 | 15 |
| N.Y.R. of Prof'l Conduct, Rule 1.7(a)(2) | 13 |

Ivy Asset Management LLC ("Ivy") respectfully submits this Reply Memorandum in further support of its motion for an order staying discovery in the related state court proceeding <u>Charles J. Hecht v. Andover Associates Management Corp. et al.</u>, Index No. 6110/2009 (Sup. Ct. Nassau County) ("<u>Hecht</u>").[1]

## ARGUMENT

### I. THIS COURT HAS JURISDICTION TO STAY DISCOVERY IN HECHT

Hecht's argument that this Court is deprived of subject matter jurisdiction to consider Ivy's motion under the <u>Rooker-Feldman</u> doctrine ignores the most recent controlling authority from the Supreme Court and the Second Circuit and is undermined by admissions Hecht himself made at the August 10, 2010 hearing before Your Honor.

The Supreme Court recently made clear that the <u>Rooker-Feldman</u> doctrine occupies exceedingly "narrow ground," and has often been improperly "construed to extend far beyond the contours of the <u>Rooker</u> and <u>Feldman</u> cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts." <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 283-84 (2005). As the Second Circuit put it – "the Supreme Court pared back the <u>Rooker-Feldman</u> doctrine to its core." <u>Hoblock v. Albany Cnty. Bd. of Elections</u>, 422 F.3d 77, 85 (2d Cir. 2005). In <u>Hoblock</u>, the Second Circuit set out the controlling test for the application of the <u>Rooker-Feldman</u> doctrine, explaining:

> [T]here are four requirements for the application of <u>Rooker-Feldman</u>. First, the federal-court [movant] must have lost in state court. Second, the [movant] must complain of injuries caused by a state-court judgment. Third, the [movant] must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court

---

[1] All terms not herein defined shall have the same meanings as in Ivy's Memorandum of Law Supporting Issuance Of A Temporary Restraining Order and Order Staying Discovery In A Related Case Pending In New York State Court ("Opening Memorandum" or "Mem."). Hecht's Memorandum of Law in Opposition to Ivy's motion is referred to as "Opposition" or "Opp'n."

> proceeding commenced – i.e., Rooker-Feldman has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

Id. at 85.  None of those elements is satisfied here.  Indeed, Hecht's Opposition does not even address them – relying instead the "inextricably intertwined" analysis set forth in Bridgewater Operating Corp. v. Feldstein, 346 F.3d 27, 29 (2d Cir. 2003), a case that the Supreme Court explicitly rejected in Exxon Mobil.[2]  There is good reason for Hecht's silence:

> First, Hecht himself admitted at the August 10 hearing before this Court that Ivy was clear that it was not asking Justice Bucaria to rule on the applicability of SLUSA, and Justice Bucaria did not rule on the applicability of SLUSA:

> > THE COURT: There is <u>no reference at all in [Justice Bucaria's opinion] to the SLUSA</u>, the application here.  The sole matter he discusses is whether there are in the case before him causes of action which are not alleged in the cases before me….
> >
> > MR. HECHT: …[Ivy's counsel] pointed out to the judge that it was not his concern, this was a matter for the federal court, but they wanted to bring it to his attention.  <u>But [Ivy's counsel] was very clear in its papers in support of its motion for a stay that if they did not get the relief they wanted from Justice Bucaria, then they were going to move in federal court for a stay under SLUSA</u>.

(TR[3] 16:2-16 (emphasis added).)

---

[2]   As one court explained post-Exxon Mobil, "MERS contends that the Rooker-Feldman doctrine bars subject matter jurisdiction over Book's claims because they are 'inextricably intertwined' with the issues settled in the state court action, relying on the Second Circuit's decision in Bridgewater Operating Corp. v. Feldstein, 346 F.3d 27 (2d Cir. 2003).  Although the factual scenario set forth in Bridgewater is similar to the present case, because the Rooker Feldman analysis in Bridgewater is drawn from Moccio v. New York State Office of Court Administration, 95 F.3d 195, 198 (2d Cir. 1996), which was overruled by the Supreme Court in [Exxon Mobil], it no longer reflects the law of this circuit."  Book v. Mortg. Elec. Reg. Sys., 608 F. Supp. 2d 277, 284 (D. Conn. 2009).

[3]   "TR" refers to the transcript of the hearing held before the Court in connection with this motion on August 10, 2010.  It is attached as Exhibit A to the Declaration of Steven J. Kaiser (hereinafter, "Kaiser Decl.").

2

Thus, in its memorandum of law supporting the grant of a stay under state law, Ivy explicitly stated: "Ivy reserves the right to move the federal court in In re Beacon and Newman for a stay under SLUSA." (Ivy's Mem. of Law Supporting Stay in Hecht, Liman Decl. Ex. M at 8.) And in its reply brief, Ivy again stated:

> As noted in the Motion, while Ivy does not move this Court under SLUSA, the C.P.L.R. gives this Court the authority to take SLUSA and the policy considerations it was enacted to fulfill without need for any party to resort to federal court, as other state courts have done.

(Reply Mem. in Support of Mot. To Stay, Kaiser Decl. Ex. B at 12 (citation omitted).)

Second, Ivy is not seeking relief from an injury caused by a state court judgment. It is seeking relief from the discovery demands that Hecht has propounded notwithstanding his prior commitment to coordinate discovery with these proceedings. In McKithen v. Brown, 481 F.3d 89, 98-99 (2d Cir. 2007), the court explained that whether it had subject-matter jurisdiction under Rooker-Feldman "turn[ed] not on the similarity between a party's state-court and federal-court claims … but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court." In other words, "a federal suit complains of injury from a state-court judgment … when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." Hoblock, 422 F.3d at 88 (emphasis added). Contrary to Hecht's unadorned assertion that "the source of the purported injury … is Justice Bucaria's state court order" (Opp'n at 11), nothing Justice Bucaria ordered required Hecht to pursue discovery prior to this Court's resolution of the motions to dismiss in these cases or to insist that Ivy respond to document requests and interrogatories while the PSLRA stay remains in effect. Indeed, Hecht served discovery on Ivy of his own accord on April 22, 2010 – over three months before Justice Bucaria decided Ivy's motion to stay. See McKithen, 481 F.3d at 98 ("[A]t least the following is evident: a party is not complaining of an

3

injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed <u>prior</u> in time to the state-court proceedings, and so could not have been 'caused by' those proceedings.").[4]

<u>Third</u>, Ivy does not invite this Court to "review and reject" a state court decision. Justice Bucaria did not rule on the applicability of SLUSA. The sole issue before him was whether to grant a stay under the standards set forth in the C.P.L.R. – an issue Ivy does not ask this Court to review. Accordingly, this Court need not review any part of Justice Bucaria's decision, or come to a conclusion different from that Justice Bucaria reached in order to grant relief to Ivy. "[I]f a [movant's] claim can reasonably be read as not challenging a state court judgment, <u>Rooker-Feldman</u> is not implicated." <u>Brown v. N.Y. State Supreme Court for the Second Judicial Dist.</u>, 680 F. Supp. 2d 424, 426 (E.D.N.Y. 2010).

<u>Fourth</u>, Justice Bucaria denied Ivy's motion for a stay on August 2, 2010 – over a year-and-a-half after the <u>Beacon</u> and <u>Newman</u> cases were filed; moreover, both <u>Beacon</u> (filed 1/27/09) and <u>Newman</u> (filed 12/16/09) were filed before <u>Hecht</u> (filed 3/31/09).

<u>Hecht</u>'s reliance on <u>Haase v. Gunnallen Financial, Inc.</u>, No. 08-10927, 2009 WL 2476099, at *3-4 (E.D. Mich. Aug. 11, 2009) is thus misplaced. First, <u>Haase</u> did not involve a motion for a stay of discovery under SLUSA at all. Rather, the <u>plaintiffs</u> in <u>Haase</u> sought a stay of state court <u>in</u> <u>rem</u> proceedings (not merely a stay of discovery pending the outcome of motions to dismiss) out of concern that the state court action would deplete the "finite pool of funds" in the possession of the federal defendant before the federal lawsuit concluded. <u>Id.</u> at *2. Thus, there was no occasion for the Court to consider whether a properly presented SLUSA application would be barred by the <u>Rooker-Feldman</u> doctrine because a state court permitted discovery to

---

[4] In declining to exercise its discretion to stay discovery, the state court did not <u>do</u> anything to "cause injury," but only refused to stop it.

proceed.  Second, Haase explicitly followed the Sixth Circuit's interpretation of the Rooker-Feldman doctrine, which focuses exclusively on the "source of the injury," and foregoes the additional elements required in this Circuit, none of which is satisfied here.  Id. at *4.  Third, the movant in Haase explicitly petitioned for a stay in state court under the federal securities laws on the same grounds that it asked for relief from the federal court prior to petitioning the federal court, and the state court rejected that argument.  Id. at *3.  Ivy did the opposite here – it made clear that it was not moving the state court under SLUSA, but instead reserved its right to move this Court in the event that the state court did not grant relief on state law grounds.

As no party disputes, SLUSA explicitly authorizes federal courts to issue orders staying discovery in pending state court proceedings.  It would be a perverse principle of federalism to hold – as Hecht asks this Court to do – that a party is foreclosed from seeking relief under SLUSA simply because it has first asked the state court to voluntarily coordinate discovery with federal proceedings.  Not surprisingly, Hecht offers no authority to support this astounding proposition – and Ivy's own research has not uncovered any.

Finally, Hecht argues that this Court should not hear the SLUSA application because Ivy "waived" its right to bring this motion by signing a form scheduling order mandated by the state court (see Liman Decl., Ex. K at 3 ¶ 4(c)).  But this argument is even weaker than Hecht's argument that the Rooker-Feldman doctrine applies.  The form scheduling order, which Ivy was required to sign (Liman Decl. Ex. K at 1 ("All items on the form must be completed unless inapplicable.")) simply ordered:  "All previously served demands and interrogatories shall be responded to on or before 10 days following decision on Ivy's motion to stay."  (Id. at 3.)  Ivy acknowledged that it would be bound by the Order – if the Order were not enjoined.  It did not express an agreement to participate in discovery much less an agreement not to seek relief from discovery if Hecht pursued discovery while motions to dismiss were still pending in federal court

5

when the state court motion was decided.  See Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 510 (2d Cir. 2002) ("Federal common law and New York common law both define waiver as the intentional relinquishment and abandonment of a known right or privilege.").  To the contrary, immediately before the scheduling order was entered, Ivy clearly preserved its right to move in federal court under SLUSA.  (Ivy's Mem. of Law Supporting Stay in Hecht, Liman Decl. Ex. M at 7 & n.5 ("Ivy reserves the right to move the federal court in In re Beacon and Newman for a stay under SLUSA."); Reply Mem. in Support of Mot. To Stay, Kaiser Decl. Ex. B at 12 ("Ivy does not move this Court under SLUSA.")), as Hecht acknowledged in the August 10, 2010 hearing before this Court.  (TR, Kaiser Decl. Ex. A at 16:12-16.)  Not surprisingly, the sole case Hecht cites to support his contention held that a stay of discovery would stay in place notwithstanding that the parties explicitly agreed to waive PSLRA protections.  (See Opp'n at 10 (citing In re Carnegie Int'l Corp. Sec. Litig., 107 F. Supp. 2d 676, 678 (D. Md. 2000).)[5]

## II.     A STAY IS NECESSARY AND APPROPRIATE

### A.     *Hecht*, *Newman*, *Sacher* and *In re Beacon* are Highly Related

Hecht's argument that there is "only minimal overlap between Hecht, Newman, and In re Beacon" (Opp'n at 2) contradicts his own prior representation in court.  Although Hecht now argues that the cases in the state court are "brought on behalf of different hedge funds, with claims based on different contract, duties, offering memoranda, auditors, Madoff accounts" etc. (Opp'n at 7), he does not dispute that In re Beacon, Newman, Hecht and Sacher all involve "the same underlying facts."  In re Crompton Corp., No. 3:03-cv-1293 (EBB), 2005

---

[5] Hecht's characterization of movant's stay motion as coming out of the blue "the day before the preliminary conference" (Opp'n at 5) is both irrelevant and untrue.  Over a month earlier, Ivy had engaged Hecht in correspondence about awaiting decisions on the other motions to dismiss in order to coordinate discovery.  (See Letter from Jeffrey A. Rosenthal to Daniel Tepper dated March 24, 2010; Kaiser Decl. Ex. C.)

WL 3797695, at *3 (D. Conn. Dec. 14, 2005); see also In re Cardinal Health Sec. Litig., 365 F. Supp. 866, 875 (S.D. Ohio 2005).  Each case seeks the same thing:  to the hold Ivy and its co-defendants liable for failing to prevent Madoff from stealing the Beacon and Andover Funds' money.  Indeed, in state court, Hecht made this very point, representing to Justice Bucaria that the Hecht (Andover Fund) and Sacher (Beacon Funds) cases involved "[p]ractically identical claims against almost all of the same defendants" (Mem. of Law in Opp'n to Mot. to Stay Proceedings, Sacher, Index. No. 5424/2009, Liman Decl. Ex. L, at 6), that "the agreements between the defendants [with respect to Andover Fund and Beacon Fund] are almost identical," id. at 6 n.3, and that "[t]he only material differences," between Sacher and Hecht are "the identity of the auditor, the name of the nominal defendant, and the percentage of the nominal defendant's assets that was entrusted to Madoff." (Id. (emphasis added).)

Hecht's state-court representation got it right.  A major aspect of the Hecht claim is that Ivy and others failed to heed supposed "red flags" concerning Madoff's fraud.  (Hecht AC, Liman Decl. Ex. E ¶¶ 236-64 (allegations against Ivy); 267-96 (allegations against BAMC, Danziger and Markhoff).)  Precisely the same allegations underlie the claims asserted against these defendants in the Newman case (see Newman SAC, Liman Decl. Ex. G ¶¶ 89, 167-171, 916-18), and form the core of the claims against Ivy in In re Beacon (see In re Beacon SAC, Liman Decl. Ex. F ¶¶ 186, 637, 643-48).  Similarly, in Hecht, Mr. Hecht accuses Ivy of failing to properly perform the administrative services that it was allegedly retained to perform for the Andover Fund.  (See, e.g., Hecht AC, Liman Decl. Ex. E ¶¶ 170-87; Opp'n at 11.)  The plaintiffs in Newman and In re Beacon make precisely the same claims, based on virtually identical allegations of fact.  (See, e.g., Newman SAC, Liman Decl. Ex. G ¶¶ 169-71; In re Beacon SAC, Liman Decl. Ex. F ¶¶ 190-94.)  Finally, in each of these cases, Ivy is alleged to have provided substantial assistance to Messrs. Danziger and Markhoff in their alleged mismanagement of, and

7

breach of fiduciary duty to, the funds they managed – including both the Beacon Funds and the Andover Fund. (See <u>Hecht</u> AC, Liman Decl. Ex. E ¶¶ 308-12; <u>Newman</u> SAC, Liman Decl. Ex. G ¶¶ 167-68; <u>In re Beacon</u> SAC, Liman Decl. Ex. F ¶¶ 562.)

Hecht suggests that "it is irrelevant that Ivy, Joel Danziger and Harris Markhoff are named as defendants in both <u>Hecht</u> and <u>Sacher</u> [not to mention <u>In re Beacon</u> and <u>Newman</u>] because <u>Hecht</u> alleges that these defendants committed different wrongs than they are alleged to have committed in <u>Sacher</u>." (Opp'n at 7.) But the filed complaints allege that Ivy, Danziger and Markhoff committed the same wrongs in <u>Hecht</u>, <u>In re Beacon</u>, <u>Newman</u> and <u>Sacher</u> – albeit with respect to two different funds. Mr. Danziger and Mr. Markhoff are alleged to have been in control of – indeed, were virtually the only actors for – both the Beacon Funds and the Andover Fund. To the extent anything was done by these funds, it was done by them. Ivy provided administrative services to the Beacon Funds and the Andover Fund that were <u>identical</u>, and were provided <u>to</u> Messrs. Danziger and Markhoff. (Mem. of Law in Opp'n to Mot. to Stay Proceedings in <u>Sacher</u>, Liman Decl. Ex. L at 6 n.3 ("[T]he agreements between the defendants [with respect to Andover Fund and Beacon Fund] are almost identical.").) Thus, the people involved are the same, the actions they are alleged to have taken or not taken are the same, the wrong (the investment with Madoff) is the same, the alleged red flags are the same, the alleged injuries resulting (the Beacon and Andover Funds' losses) are the same, and the source of the ultimate loss (Madoff's theft of that money) is the same. There are virtually no facts alleged to be unique to Andover as opposed to Beacon.

Hecht also argues that the legal theories in each case are different. But first, even were Hecht correct in his focus solely on the legal claims, a stay would still be warranted, as even Hecht concedes that "[i]t is true that Counts IX, XV and XVI in <u>Newman</u> overlap with

8

certain causes of action alleged in Hecht." (Opp'n at 16 (footnote omitted).)[6]  Second, as this Court properly recognized at the August 10, 2010 hearing, however, "[t]he sole matter [Justice Bucaria's opinion] discusses is whether there are in the case before him causes of action which are not alleged in the cases before me.  The cases <u>clearly indicate that that would not be a reason for denying a stay</u>."  (TR, Kaiser Decl. Ex. A at 16:3-7 (emphasis added)); see also Newby v. Enron Corp., 338 F.3d 467, 472 (5th Cir. 2003) (Congress "intended that [78 U.S.C. § 78u-4(b)(3)(D)] be applied 'liberally...'"); In re Cardinal Health, 365 F. Supp. 2d at 875-76; In re Dot Hill Sys. Corp. Sec. Litig., 594 F. Supp. 2d 1150, 1166 (S.D. Cal. 2008) (staying non-identical derivative case in state court, noting "Congress's intent for a liberal application of SLUSA's discovery stay provision.").[7]

**B.    A Stay Is Necessary And Appropriate To
       Prevent Circumvention of The PSLRA Discovery Stay**

Hecht argues that a stay is not necessary or appropriate because he does not have a common interest with the Newman plaintiffs, a confidentiality agreement would prevent state court discovery from being used in the federal proceedings and discovery could proceed in "tranches."  However, Newman and Hecht have substantial overlap, and, as Ivy has argued, no

---

[6]    It is of no moment that Hecht asserts in a footnote that he has pled three additional causes of action such that his case does not overlap entirely with Newman.  No authority requires complete overlap for SLUSA to apply.

[7]    Hecht's attempt to distinguish the authority on which Ivy relies is makeweight.  For instance, Hecht argues that in Newby, the state plaintiffs were included in the federal class.  While Hecht may not be a member of the federal class, his clients (the Sachers) indisputably are.  (Opp'n at 20.)  Similarly, Hecht asserts that In re Dot Hill concerned a state court case that was filed after the federal court case (id. at 21).  While that factor was not material to the court's decision, the federal cases here were both filed before Hecht.  As to In re Crompton Corp. Sec. Litig., No. 03 Civ. 1293 (EBB), 2005 WL 3797695 (D. Conn. Dec. 14, 2005), Hecht notes that the complaints in the state and federal actions were similar, and the plaintiffs in both actions were represented by the same attorney.  (Opp'n at 20.)  But here, the factual allegations virtually identical to those in Hecht are present in all of Sacher, In re Beacon and Newman; and Hecht's decision to serve a dual role as plaintiff in Hecht and counsel in Sacher makes him inextricably intertwined with the interests of the In re Beacon class.  Finally, Hecht simply cannot distinguish In re Cardinal Health:  while he claims that case is inapposite because the state case there was far more advanced than the federal cases, he makes exactly the same claim about Hecht in relation to the federal cases here in his own opposition.  (Opp'n at 1 ("Hecht is the farthest advanced of any Madoff-related derivative or class action suit in the country. … Hecht is now ready for discovery to take place.").)

9

state court order addressed to confidential documents could prevent state-court discovery from affecting the federal proceedings. The "tranched" discovery Hecht proposes only highlights the overlap in discovery in all of these cases.

First, Hecht's argument that "it is not in the interest of the plaintiff in Hecht to help the plaintiffs in Newman" (Opp'n at 17), besides being irrelevant, is simply wrong. While it is true that the plaintiffs in Newman have nominally named the Andover Fund as a "defendant," those plaintiffs do not assert a single claim for relief against the Andover Fund. (See, Newman SAC, Liman Decl. Ex. G.) In truth, both Hecht and Newman are brought by Andover Fund investors seeking – by the distinct devices of class and derivative claims – to obtain recovery exclusively from third parties, including Ivy, for their losses. Discovery relating to the services that Ivy (and the other defendants) provided to the Andover Fund is, accordingly, equally relevant in both cases. In re DPL Inc. Sec. Litig., 247 F. Supp. 2d 946 (S.D. Ohio 2003) (staying discovery).[8] In any event, even the cases Hecht cites state that the movant need not prove an intent by the state court plaintiff to circumvent the PSLRA. See In re Gilead Scis. Sec Litig., No. C 03-4999 (MJJ), 2004 WL 3712008, at *2 (N.D. Cal. Nov. 22, 2004); In re Regions Morgan Keegan Sec., No. 07 02830, 2010 WL 596444, at *3 (W.D. Tenn. Feb. 16, 2010).[9]

---

[8] Hecht's attempt to distinguish In re DPL on the basis that he "does not represent any of the plaintiffs in either Newman or In re Beacon" and that "the parties in Hecht have agreed to enter into a confidentiality agreement," fails. (Opp'n at 19.) While Hecht may not be counsel for the named plaintiff, he certainly is (and does not deny that he is) counsel for members of the purported class in In re Beacon. Hecht also notes that "the court in DPL later modified the stay so that it remained in effect only until the motion to dismiss was sub judice." (Id. at 19.) He fails to note that the reason for the modification was the federal defendants' failure to adhere to the court's scheduling order, by which they "unilaterally extended the stay." In re DPL, Inc., 285 F. Supp. 2d 1053, 1061 (S.D. Ohio 2003). Ivy has never sought to extend briefing in In re Beacon, and the motions to dismiss that case will be fully submitted shortly.

[9] Indeed, were Hecht's intent relevant (as he argues), Ivy would be entitled to take discovery on the self-serving assertions in his affidavit regarding the meeting among plaintiffs' counsel before the Court could rely upon it. Thus, to the extent that the Court does rely on those assertions, movant respectfully requests the opportunity to take discovery of Hecht, as well as the other attendees at the conference, which would not be covered by any applicable privilege insofar as Hecht has disavowed any common interest in his submission.

Indeed, by highlighting his lack of interest in helping the plaintiffs specifically in Newman, Hecht is noticeably silent with respect to whether he has an interest to assist the plaintiffs in In re Beacon. The reason is obvious – Hecht represents putative plaintiffs in that case. Hecht does not dispute that were he to come into possession of material that supported the claims in In re Beacon (and it is not far-fetched to suggest that Hecht might believe that documents obtained in discovery would support those claims – whether they do or not), he would be duty bound to use that information to aid the Sachers' cause. See N.Y.R. of Prof'l Conduct, Rule 1.7(a)(2) ("[A] lawyer shall not represent a client if a reasonable lawyer would conclude … that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests."). The Sachers have a very keen interest in these proceedings – any recovery by the class in In re Beacon will inure to their benefit, and because their own case, brought on behalf of Beacon II, is stayed until the final disposition of claims in In re Beacon and the disposition of the derivative claims in this case (including the derivative claims brought on behalf of Beacon II) will likely have preclusive effect over their own claims in Sacher. As even the case law on which Hecht relies makes clear, "[t]he risk of circumvention is greatest when counsel for the state court plaintiffs also represent plaintiffs in the federal action." In re Regions, 2010 WL 596444, at *4; see also In re Gilead, 2004 WL 3712008, at *3. Ivy has shown far more than the "mere existence of parallel state action." In re Cisco Sys., Inc. Sec. Litig., No. C 01-20418 (JW), 2002 WL 32987531, at *2 (N.D. Cal. Jan. 30, 2002).[10]

---

[10]   In In re Regions, the court refused to enter a SLUSA stay because "[d]efendants have failed to explain why a properly drafted order would not prevent disclosure," and "the fact that [plaintiff's] counsel is not involved in the federal litigation," 2010 WL 596444, at *4. Likewise, in Gilead, the court denied a stay motion because "there are separate attorneys representing each set of plaintiffs in the respective actions" and "no evidence of collusion between Plaintiffs and State Plaintiffs." 2004 WL 3712008, at *3. By contrast, here, Ivy has offered numerous reasons that a confidentiality order is not sufficient to protect

11

Second, Hecht fails entirely to respond to Ivy's argument that a confidentiality agreement simply cannot be effective to prevent state court discovery from leaking into these proceedings, another argument that Hecht seemingly ignores. Hecht does not argue that an order of this Court, or of a state court, could prevent him, consistent with his ethical obligations, from using relevant information on behalf of his clients, Mr. and Mrs. Sacher, and even if a court could enter such an order it would present substantial issues of monitoring and enforceability. See In re Adelphia Commc'ns. Corp. Sec. & Deriv. Litig., No. 03 MDL 1529 (LMM), 2004 WL 2202586 (S.D.N.Y. Sept. 28, 2004) (ordering that state court plaintiffs who did not represent any federal plaintiffs could not share discovery with parties to the federal cases).[11]

Moreover, even setting aside Hecht's representation of the Sachers, Ivy has shown – and Hecht does not dispute – that no confidentiality agreement could prevent documents used in proceedings in connection with the Hecht case from reaching these proceedings.[12] As Ivy pointed out in its Opening Memorandum, there is a presumption in state court (as there is in federal court) that court proceedings – including discovery disputes – are conducted in the open. (see Mem. at 11 n.4 (citing 22 N.Y.C.R.R. § 216.1).) Ours is a country that does not routinely countenance secret court proceedings – in part because our Constitution and the common law both recognize an interest of the public (not merely of litigants) to know of the proceedings in their courts. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-21 (2d Cir. 2006). Accordingly, there is substantial authority from New York's appellate division prohibiting the

---

the integrity of these proceedings – and Hecht has not only coordinated with the federal plaintiffs, he represents a member of the purported federal class.

[11] While acknowledging Ivy's concerns (Opp'n at 18), Hecht offers no substantive answer to them – arguing only that "an opportune time to resolve Ivy's concerns" (id. at 18 n.13) would be the September 7, 2010 compliance conference before the state court in Hecht. Hecht offers no explanation as to how Ivy's concerns could be addressed.

[12] Hecht's argument that Ivy "produc[ed] … insurance coverage documents under an informal confidentiality agreement made by e-mail" (Opp'n at 18) is nonsensical. Insurance documents are not relevant to liability – indeed, they are not even admissible evidence. See Fed. R. Evid. 411.

12

wholesale sealing of court records.  See, e.g., L.K. Station Grp. LLC v. Quantek Media, LLC, 872 N.Y.S.2d 691 (Sup. Ct. N.Y. County Aug. 7, 2008); Mancheski v. Gabelli Grp. Capital Partners, 39 A.D.3d 499, 502 (2d Dep't 2007).  Protective orders and confidentiality agreements are designed and used for the protection of select documents of a sensitive personal, business, financial or trade significance – not to permit entire cases to proceed in secret.  Even were movant permitted by the state court in Hecht to designate every single document as confidential (and there is no reason to believe that Justice Bucaria would sign such an order), any discovery disputes (as there inevitably are in nearly every case) would result in the public disclosure of documents and/or testimony absent a court order of secrecy.  These same concerns have prompted a number of courts to enter stays under SLUSA notwithstanding the existence of well-drafted confidentiality agreements between the parties to the state court proceedings.  See In re Cardinal Health, 365 F. Supp. 2d at 875-76 (confidentiality agreement entered; stay granted); In re Dot Hill, 594 F. Supp. 2d at 1167 (confidentiality agreement entered; stay granted); In re Crompton Corp. Sec. Litig., 2005 WL 3797695, at *4 (despite offers to enter into a confidentiality agreement; stay granted).[13]

---

[13] The draft confidentiality agreement in this case makes the point.  (Opp'n at 17-18.)  By its own terms, it only treats as confidential documents or testimony that "contain trade secrets, proprietary business information, competitively sensitive information, or other information the disclosure of which would … be detrimental to the conduct of that party's business or the business of any of that party's customers or clients" (Kaiser Decl. Ex. D § 1(a)), thereby covering only a small portion of the discovery that the PSLRA bars the plaintiffs in Newman and In re Beacon from receiving.  Although the draft order purports also to treat as confidential all documents produced while Ivy's motions to dismiss are pending (id. § 9), Hecht presents no authority to suggest that the state court could sign such an order.  (Compare Mem. at 11 n.4.)  Even if the court signed the draft order, it would not on its own address the evils SLUSA was intended to prevent.  In the event of the inevitable discovery dispute, the order would require Ivy to move for a sealing order (that Hecht could oppose and that would be judged under the provisions of the C.P.L.R. and not by the confidentiality agreement's provision that all documents be treated as confidential until a ruling on the motions to dismiss).  (See Kaiser Decl. Ex. D § 13(a).)  Hecht himself appears to recognize the order would not ensure confidentiality until a ruling on the defendants' motions to dismiss:  the order includes a provision that would require Ivy to bring an emergency motion to this Court if the state court denied Ivy's motion for a sealing order – and even then would permit Hecht to oppose that emergency motion.  (Id. § 13(a)(i).)  The Order would also permit Hecht to share confidential information with a broad range of people including, presumably, the Sachers.  (Id. § 5.)

Hecht also ignores that the Andover and Beacon Funds – represented by the same counsel, Herrick Feinstein – are nominal parties in all four cases, <u>Hecht</u>, <u>Sacher</u>, <u>In re Beacon</u> and <u>Newman</u>. As a result, even were a confidentiality agreement in place in Hecht, the Funds would have access to any documents produced in <u>Hecht</u> by the movant, which their counsel might be duty-bound to use in the two federal cases, particularly if they conclude that these documents warrant their direct assertion of the claims currently being pursued derivatively.[14]

Third, Hecht's proposal that discovery proceed in "tranches" is unworkable. (Opp'n at 8 n.6.)[15] It also only highlights the substantial relationship among the cases. While Hecht initially volunteers to limit his document requests, he does not actually specify the scope of his proposed limitation – suggesting instead that the appropriate time to determine what documents Ivy will be required to produce is "at the compliance conference scheduled for September 7" in the state court. (<u>Id.</u> at 15.) Among the documents that Hecht argues should form the core of the first wave of discovery are all of Andover's trade execution documents (reflecting all of the Andover Fund's trading activity during its entire history), copies of all of Andover's account statements, all documents reflecting the account reconciliation services provided by Ivy to the Andover Fund, and copies of the Andover Fund's service contracts. (<u>Id.</u> at 14-15.) Hecht does not, however, argue that these documents are irrelevant to Beacon or Newman, nor could he. A central issue in <u>In re Beacon</u> and <u>Newman</u>, as in <u>Hecht</u> and <u>Sacher</u>, concerns Ivy's knowledge of alleged indicia that Madoff was engaged in fraud. The plaintiffs in

---

[14] Indeed, not only does the Funds' right to take over the derivative claims render meaningless <u>any</u> attempt at confidentiality, but Hecht's right to amend his complaint based upon documents produced by movants – which this Court presumably would not prohibit (if it even could) – would have the same impact.

[15] In essence, Hecht's approach would have this Court exercise continuing jurisdiction to determine on a document-by-document basis whether particular documents are – or are not – relevant to <u>Newman</u> and <u>In re Beacon</u>. There is no reason for such an approach even if Hecht could make the claim that certain documents are relevant only to Andover (which he has not). The SLUSA stay is itself narrowly tailored – it will expire once the motions before this Court are decided.

In re Beacon and Newman allege that Ivy knew that Madoff was engaged in fraud because of, among other reasons, irregularities in the trading information he reported to his clients. (See, e.g., In re Beacon SAC, Liman Decl. Ex. F ¶ 190; Newman SAC, Liman Decl. Ex. G ¶ 170.) Ivy disputes that notion. That Hecht seeks discovery of only the Andover Fund's, and not the Beacon Funds', trading information is irrelevant.[16] These documents constitute Madoff's representations to Ivy regarding the trading it conducted that generated the returns he reported. Madoff's strategy was ostensibly identical for all of the accounts. Plaintiffs in all of the cases thus have claimed that red flags with respect to any one of the funds managed by Madoff constitute red flags with respect to all. See In re Crompton Corp., 2005 WL 3797695, at *3 ("Defendants need only show a likelihood that the federal Plaintiffs will obtain state Plaintiff's discovery."); In re Cardinal Health, 365 F. Supp. 2d at 875 ("The dispositive question with regard to 'risk of circumvention' is whether some form of relevant discovery is likely to reach the federal plaintiffs during the pendency of a motion to dismiss in federal Court.").

### III.  HECHT'S OBJECTION TO THE TRO IS WITHOUT MERIT

There is no procedural deficiency in this Court's temporary restraining order. While Ivy very much disagrees with Hecht's characterization of the process by which the TRO was issued – indeed, Ivy could hardly have provided Hecht with more notice that it was planning to seek that order – the Court need not delve into that issue. Irrespective of what preceded the August 10, 2010 hearing, Hecht thereafter consented to the entry of a TRO so that he could submit briefs rather than argue the motion orally. (TR, Kaiser Decl. Ex. A at 18:5 ("MR. HECHT: Why don't we do it [extend the TRO] on consent so we can pick a date certain.").)

---

[16]  Hecht's repeated characterization of "Ivy's burden in responding to discovery in Hecht [as] minimal" (Opp'n at 2) is without basis. While the relative volume may be less than requiring Ivy to produce all documents requested by Hecht, it would be a huge burden for movants to be compelled to search through millions of documents to identify and produce those in his proposed first tranche. Indeed, the burden would be increased insofar as Hecht proposes that movants conduct multiple searches of their millions of documents, tranche by tranche.

## **CONCLUSION**

For the reasons stated herein, in Ivy's Opening Memorandum and at oral argument on August 10, 2010, Ivy respectfully requests that this Court grant its motion for a stay of discovery in <u>Hecht</u> pending resolution of the motions to dismiss in these cases.

Dated:  August 23, 2010
         New York, New York

                                    Respectfully Submitted,

                                    CLEARY GOTTLIEB STEEN & HAMILTON LLP


                                    By:    /s/ Lewis J. Liman
                                           Lewis J. Liman
                                           Jeffrey A. Rosenthal
                                           Members of the Firm

                                    One Liberty Plaza
                                    New York, New York 10006
                                    (212) 225-2000
                                    (212) 225-3999 (facsimile)
                                    lliman@cgsh.com
                                    jrosenthal@cgsh.com

                                    *Attorneys for Ivy Asset Management LLC*