UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID B. NEWMAN and IRA F/B/O DAVID NEWMAN-PERSHING LLC as Custodian, on behalf of themselves and all Others Similarly Situated, and Derivatively on behalf of FM LOW VOLATILITY FUND, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> FAMILY MANAGEMENT CORPORATION, SEYMOUR W. ZISES, ANDREA L. TESSLER, ANDOVER ASSOCIATES LLC I, ANDOVER ASSOCIATES MANAGEMENT CORP., BEACON ASSOCIATES LLC I, BEACON ASSOCIATES MANAGEMENT CORP., JOEL DANZIGER, HARRIS MARKHOFF, IVY ASSET MANAGEMENT CORP., THE BANK OF NEW YORK MELLON CORPORATION, MAXAM ABSOLUTE RETURN FUND, LP, MAXAM CAPITAL MANAGEMENT LLC, MAXAM CAPITAL GP, LLC, MAXAM CAPITAL MANAGEMENT LIMITED, SANDRA MANZKE, and JOHN DOES 1-100, <br><br> Defendants, <br><br> and <br><br> FM LOW VOLATILITY FUND, L.P., <br><br> Nominal Defendant. | 08 Civ. 11215 (LBS) |

**MEMORANDUM OF LAW OF
DEFENDANTS FAMILY MANAGEMENT CORPORATION,
SEYMOUR W. ZISES AND ANDREA L. TESSLER IN OPPOSITION
TO PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT**

Defendants Family Management Corporation ("FMC"), Seymour W. Zises ("Zises") and Andrea L. Tessler ("Tessler" and collectively the "FMC Defendants") respectfully submit this Memorandum of Law in Opposition to Plaintiffs' Motion to Alter or Amend the Judgment dismissing this action with prejudice, which was entered by the Court on October 20, 2010.

As demonstrated in Defendants Ivy Asset Management LLC's and The Bank of New York Mellon Corporation's Opposition to Plaintiffs' Motion to Alter or Amend the Judgment and for Leave to Amend the Complaint (the "Ivy Opposition"), Plaintiffs' motion – which in reality is nothing more than a thinly veiled request for reconsideration of the arguments that the Court thoroughly considered and rejected in its well-reasoned October 20 Order – is untimely and does not come close to meeting the high standard for a motion for relief from the judgment. Rather than burden the Court with duplicative briefing on these dispositive points mandating denial of Plaintiffs' motion, the FMC Defendants join in and incorporate by reference the arguments in Point I of the Ivy Opposition.

Plaintiffs' motion should be denied for the additional reason that the proposed Third Amended Complaint simply repackages the legally insufficient allegations in the Second Amended Complaint and seeks to add new allegations that were available to Plaintiffs but strategically omitted from the Second Amended Complaint. Such tactical maneuvering is an inappropriate basis for a Rule 59 motion, which requires Plaintiff to identify specific facts that were either in the record but overlooked by the Court in the October 20 Order or newly discovered and unavailable to Plaintiffs prior to the October 20 Order. Moreover, the proposed Third Amended Complaint against the FMC Defendants does not and cannot cure the fatal

1

defects that led to dismissal with prejudice of all of their claims in the Second Amended Complaint.[1]

Plaintiffs argue that the proposed Third Amended Complaint would cure the deficient scienter allegations that mandated dismissal of their claims for violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by allegedly adding new allegations (i) that the FMC Defendants knowingly misrepresented the diversification requirements of the FM Fund because they allegedly knew that Beacon, Andover and Maxam each invested with Madoff and that the FM Fund would thereby indirectly have an approximately 60% exposure to Madoff; (ii) that the FMC Defendants' due diligence obligations were not limited to the Beacon, Andover and Maxam Funds but applied directly to Madoff;[2] (iii) that the FMC Defendants supposedly knew that Andover and Ivy were not performing due diligence on Madoff; (iv) that the FMC Defendants had significant personal investments in Beacon, Andover and Maxam; and (v) that the FMC Defendants ignored additional purported red flags concerning Madoff.

Plaintiffs' argument that the FMC Defendants misrepresented the diversification requirements because they knew that Andover, Beacon and Maxam all invested heavily with Madoff is nothing new. Plaintiffs made the exact same argument in opposition to the FMC Defendants' motion to dismiss the Second Amended Complaint. (Pl. Opp. Mem. at 23-24.) The FMC Defendants demonstrated the fallacy in Plaintiffs' argument by pointing to the plain language of the FM Fund Offering Memorandum, which disclosed that "no single Investment

---

[1] In the event the Court grants Plaintiffs' motion, the FMC Defendants reserve the right to seek dismissal of the Third Amended Complaint at the appropriate time for failure to state a claim for relief.

[2] Plaintiffs falsely allege that Zises told Plaintiff Newman *in December 2008* that Zises had not visited Madoff's office to conduct due diligence in several years. Aside from being irrelevant, since the FMC Defendants never represented that they would perform due diligence on Madoff, Plaintiffs do not offer any excuse as to why this supposedly critical fact did not appear in any of the three complaints filed by Newman between December 2008 and December 2009, but was purportedly remembered two years later as part of Plaintiffs' desperate attempt to resuscitate their claims.

2

Vehicle will comprise more than 35% of the FM Funds' Net Asset Value" and clearly defined "Investment Vehicle" to refer to the private investment funds and hedge fund-of-funds in which the FM Fund invested, and not to the underlying investments made by such private investment funds and fund-of-funds. (Offering Memo at 3, attached as Exhibit B to the February 16, 2010, Declaration of Neil A. Steiner in Support of the FMC Defendants' Motion to Dismiss; *see also* October 20 Opinion at 4-5.)

The "new" allegation concerning diversification that Plaintiffs seek to add to the proposed Third Amended Complaint is that an employee of FMC, Marshall Kiev, allegedly told Plaintiff Newman *in October 2008* that Andover, Beacon and Maxam each invested with Madoff and that as a result the FM Fund had a 62% exposure to Madoff. Plaintiffs offer no explanation for why they waited more than two years and until their proposed fourth pleading to assert this allegation. But the reason is obvious: Far from supporting a fraud claim, Newman's admission that he was told prior to Madoff's confession that the FM Fund indirectly had an approximately 62% exposure to Madoff totally defeats the claim that he was deceived. *See, e.g., de Atucha v. Hunt*, 756 F. Supp. 829, 831 (S.D.N.Y. 1991) ("[A] plaintiff's actual knowledge of the allegedly misrepresented or omitted facts is fatal to his or her fraud claim."); *Sanitoy, Inc. v. Shapiro*, 705 F. Supp. 152, 156 (S.D.N.Y. 1989) ("[A] plaintiff's knowledge of the true facts precludes it from being able to satisfy all of the elements of fraud."). Plaintiffs' argument that, even if he wanted to, Newman could not have redeemed his FM Fund investment following this purported conversation with Kiev due to the lockup restrictions on the FM Fund misses the point -- not only did Newman not even try to redeem his investment, in the two months from this conversation until Madoff's confession, Newman never complained to any of the FMC

3

Defendants that he believed he had been deceived or defrauded into investing in the FM Fund. Plaintiffs' silence up until the time the loss was incurred is telling.

The supposedly "new" allegations concerning the FMC Defendants' purported obligation to conduct due diligence on Madoff directly rather than only to conduct due diligence on Andover, Beacon and Maxam as the Investment Vehicles in which FM Fund invested, are likewise neither new nor sufficient to give rise to a claim. Plaintiffs argued in opposition to the FMC Defendants' motion to dismiss the Second Amended Complaint that the FMC Defendants could not have performed the promised due diligence on Madoff. The FMC Defendants, citing the FM Fund's Offering Memorandum as well as FMC's Form ADV, demonstrated that their obligation to conduct due diligence extended only to the Investment Vehicles of Andover, Beacon and Maxam, and not to Madoff. (FMC Defendants' Reply Memorandum of Law in Support of Motion to Dismiss the Second Amended Complaint, dated May 21, 2010, at 5-6; *see also* October 20 Order at 4.)

Plaintiffs also seek to add the new allegation that the FMC Defendants somehow knew as a result of their longstanding relationship with Andover, Beacon and Maxam that those Funds were not conducting due diligence on Madoff and that Andover and Beacon had agreed with Ivy that Ivy would stop conducting such due diligence. But the October 20 Order specifically noted that Plaintiffs' own admission showed the opposite – that Andover, Beacon and Ivy had "secretly" amended the Ivy consulting agreement to exclude due diligence on Madoff such that the FMC Defendants would not have knowledge of that fact. (October 20 Order at 14-15 n.5.) The Court should not tolerate Plaintiffs' request to replace their prior admission with a conclusory allegation that the FMC Defendants knew about Andover and Beacon's "secret"

agreement with Ivy based on nothing more than being longstanding investors in Andover and Beacon.

Plaintiffs' purportedly new allegations regarding the FMC Defendants' own personal investments in Andover, Beacon and Maxam is neither new nor persuasive. Far from being "cogent" and "at least as compelling as any opposing inference," Plaintiffs' suggestion that the FMC Defendants' own investments in the three funds give rise to an inference that the FMC Defendants knew that those funds were not conducting due diligence on Madoff is patently illogical and should not be credited. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007); *see also, e.g.*, *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (to survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Plaintiffs' attempt to add new allegations concerning the FMC Defendants' personal exposure to Madoff fares no better. Plaintiffs do not, because they cannot, explain how these allegations are in any way "new." Plaintiff Newman, along with the rest of the FMC Defendants' clients who had exposure to Madoff, received a letter from the FMC Defendants *in December 2008* explaining that they too had significant exposure to Madoff.[3] Indeed, the FMC Defendants retained, at their own expense, counsel to explore potential avenues of recovery on behalf of themselves, the FM Fund and their clients who had exposure to Madoff. Moreover,

---

[3] Plaintiffs erroneously claim that Zises also had direct investments with Madoff by quoting out of context the December 2008 letter. But Plaintiffs know, as they admit elsewhere in the proposed Third Amended Complaint, that the FMC Defendants' significant exposure to Madoff was through their investments, alongside their clients, in Beacon, Andover, Maxam and the FM Fund.

5

Plaintiffs admit that specific details concerning the FMC Defendants' investments in Andover, Beacon and Maxam were publicly available no later than June 11, 2009 -- six months *before* the Second Amended Complaint was filed. It is clear that Plaintiffs made the strategic decision to omit these allegations from their prior complaints because it is well-settled that the FMC Defendants' substantial exposure to Madoff undermines any allegation of scienter. *See, e.g., Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (defendants' continued investment undermines a Section 10(b) claim); *Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43, 60 (E.D.N.Y. 1999) (defendants' continuous, substantial investment belies any inference of fraudulent intent), *aff'd sub nom. Fishbaum v. Liz Claiborne, Inc.*, 189 F.3d 460, No. 98-9396, 1999 WL 568023 (2d Cir. 1999) (unpublished).

The Court also thoroughly considered and rejected the argument that the FMC Defendants acted recklessly by ignoring purported "red flags" concerning Madoff. (October 20 Order at 14-16.) As the Court explained:

> Plaintiffs do not allege that FMC had access to additional information that was not available to other financial professionals. Rather, Plaintiffs' red flag theory is essentially that rejected by the Court of Appeals for the Second Circuit in *South Cherry*: had BAMC investigated Madoff, it would have uncovered that he was a fraud. *See* 573 F.3d at 112 (rejecting scienter allegations when the "[c]omplaint alleged that '[i]f' [defendant] had asked various questions earlier, it would have further questioned the Bayou Accredited financial records or recognized the need to ask further questions"). For twenty years, Madoff operated this fraud without being discovered and with only a handful of investors withdrawing their funds as a result of their suspicions. The actions of the minority cannot support an inference of intent to defraud as to the numerous other investors who were still in the dark. An inference of scienter here is simply not as cogent and compelling as the "opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

(October 20 Order at 15-16.) Plaintiffs do not, because they cannot, propose to add any new factual allegations in the Third Amended Complaint that would show that the FMC Defendants

6

"had access to additional information that was not available to other financial professionals." (October 20 Order at 15.) Accordingly, this theory too is insufficient to meet the high burden of a motion for reconsideration or to alter or amend the judgment of dismissal.

Finally, the Ivy Opposition explained that SLUSA preempts all of Plaintiffs' state law claims. (Ivy Opp. at 15-16.) This Court correctly analyzed the SLUSA preemption issue in the October 20 Order, as well as in its decision in *In re Beacon Assocs. Litig.*, No. 09 Civ. 777 (LBS), 2010 WL 3895582, at *34 (S.D.N.Y. Oct. 5, 2010). Other Courts in this Circuit have reached the identical conclusion. *See, e.g., Barron v. Igolnikov*, No. 09 Civ. 4471, 2010 WL 882890, at *3-4 (S.D.N.Y. Mar. 10, 2010); *Levinson v. PSCC Servs., Inc.*, No. 09 Civ. 0269, 2009 WL 5184363, at *11 (D. Conn. Dec. 23, 2009); *Backus v. Conn. Cmty. Bank, N.A.*, No. 09 Civ. 1256, 2009 WL 5184360, at *9 (D. Conn. Dec. 23, 2009). Specifically, the Court's October 20 Order already rejected Plaintiffs' argument that the FM Fund's investments in other funds that believed they were investing in covered securities, rather than buying and selling covered securities itself, were too attenuated to be preempted by SLUSA. (October 20 Order at 19.) Nothing in the proposed Third Amended Complaint changes the fact that Plaintiffs' state law claims arise from purported purchases and sales of covered securities by the Beacon, Andover and Maxam Funds. Accordingly, Plaintiffs' motion with respect to the state law claims should be denied on this independent basis.

## Conclusion

For the foregoing reasons, Defendants Family Management Corporation, Seymour W. Zises and Andrea L. Tessler respectfully request that the Court deny Plaintiffs' motion to alter or amend the judgment.

Dated: New York, New York
December 17, 2010

DECHERT LLP

By: _____
Andrew J. Levander
Neil A. Steiner
Erika Gellert
1095 Avenue of the Americas
New York, New York  10036
(212) 698-3500
*Attorneys for Defendants Family Management Corporation, Seymour W. Zises and Andrea L. Tessler*

8