MANDATE

N.Y.S.D. Case # 08-cv-11215(LBS)

11-622-cv
Newman v. Family Mgmt. Corp.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of July, two thousand thirteen.

Present:
> RALPH K. WINTER,
> PETER W. HALL,
> GERARD E. LYNCH,
> > *Circuit Judges*.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 07, 2013

_____

DAVID B. NEWMAN and IRA F/B/O DAVID NEWMAN-PERSHING LLC as Custodian, on behalf of themselves and all Others Similarly Situated, and Derivatively on behalf of FM LOW VOLATILITY FUND, L.P.,

> *Plaintiffs–Appellants*,

v.                                                                                                  No. 11-622-cv

FAMILY MANAGEMENT CORPORATION; SEYMOUR W. ZISES; ANDREA L. TESSLER; ANDOVER ASSOCIATES LLC I; BEACON ASSOCIATES LLC I; MAXAM CAPITAL MANAGEMENT LLC; MAXAM CAPITAL GP, LLC; MAXAM CAPITAL MANAGEMENT LIMITED; SANDRA MANZKE; and JOHN DOES 1-100, MAXAM ABSOLUTE RETURN FUND, LP,

> *Defendants–Appellees*,

1

MANDATE ISSUED ON 08/07/2013

FM LOW VOLATILITY FUND, L.P.,

    *Nominal Defendant–Appellee*,

ANDOVER ASSOCIATES MANAGEMENT CORP.; BEACON ASSOCIATES MANAGEMENT CORP.; FULVIO & ASSOCIATES, LLP, JOEL DANZIGER; HARRIS MARKHOFF; IVY ASSET MANAGEMENT CORP.; and THE BANK OF NEW YORK MELLON CORPORATION,

    *Defendants*.[*]

_____

| | |
|---|---|
| FOR APPELLANTS: | DANIEL W. KRASNER, Wolf Haldenstein Adler Freeman & Herz LLP, New York, NY. |
| FOR APPELLEES: Family Management Corp.; Seymour W. Zises; Andrea L. Tessler. | NEIL A. STEINER (Andrew J. Levander, *on the brief*) Dechert, LLP, New York, NY. |
| FOR APPELLEES: MAXAM Capital Management LLC; MAXAM Capital GP, LLC; MAXAM Capital Management Ltd.; Sandra Manke. | KIMBERLY PERROTTA COLE (Jonathan D. Cogan, Carrie A. Tendler, Michael S. Kim, *on the brief*), Kobre & Kim LLP, New York, NY. |
| FOR APPELLEE: FM Low Volatility Fund, L.P. | BARRY R. LAX (Gabrielle J. Pretto, *on the brief*), Lax & Neville LLP, New York, NY. |
| FOR APPELLEE: MAXAM Asbolute Return Fund. | JAMES N. LAWLOR, Wollmuth Maher & Deutsch LLP, Newark, NJ. |

_____

    Appeal from a judgment of the United States District Court for the Southern District of New York (Sand, *J.*).

___

[*] The parties submitted and we so ordered a non-dispositive dismissal with prejudice of the appeal as to defendants Andover Associates Management Corp., Beacon Associates Management Corp., Joel Danziger, Harris Markhoff, Ivy Asset Management Corp. (n/k/a Ivy Asset Management LLC) and The Bank of New York Mellon Corp. We respectfully request that the Clerk amend the caption accordingly.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs–Appellants David B. Newman and IRA FBO David Newman–Pershing LLC (collectively, "Plaintiffs") appeal the district court's October 20, 2010 decision granting the Defendants–Appellees' motions to dismiss Plaintiffs' putative class action complaint in its entirety, and the district court's February 2, 2011 decision denying Plaintiffs' motion to amend the judgment under Federal Rule of Civil Procedure 59(e) and denying Plaintiffs' Rule 15(a) motion for leave to amend the complaint. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

We review *de novo* a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6), "accept[ing] all well-pleaded allegations in the complaint as true [and] drawing all reasonable inferences in the plaintiff's favor." *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010). We also review *de novo* "a denial of leave to amend on the ground that the proposed new complaint does not state a claim on which relief can be granted." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185–86 (2d Cir. 2012).

**I. Fraud Claims as to the FMC Defendants**

On appeal, Plaintiffs first assert that the district court erred in dismissing its federal securities fraud and New York common law fraud claims against Family Management Corporation and its alleged control persons Seymour Zises and Andrea Tessler (collectively the "FMC Defendants"), arguing that the complaint's allegations are sufficient to plead a violation of Section 10(b) of the Securities Exchange Act of 1934. We disagree.

3

The elements of claims for federal securities fraud and New York common law fraud are nearly identical. "To state a claim under § 10(b) of the Securities Exchange Act or Rule 10b–5, a plaintiff must plead that the defendant (1) made a false material representation or omitted a material fact, (2) with scienter, and (3) that the plaintiff's reliance on defendant's action caused plaintiff injury." *Starr ex. rel. Estate of Sampson v. Georgeson Shareholder, Inc.*, 412 F.3d 103, 109 (2d Cir. 2005). Fraudulent misrepresentation under New York law requires a plaintiff to show that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186–87 (2d Cir. 2004). The district court dismissed the fraud claims in the Second Amended Complaint because the allegations of scienter—the so-called "red flag theory" that had FMC defendants investigated Madoff, they would have uncovered his fraud—were simply "not as cogent and compelling as the 'opposing inference of nonfraudulent intent,'" that the investors were simply duped by Bernard Madoff as many other financial professionals had been. *Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 311 (S.D.N.Y. 2010) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)). The court similarly denied leave to amend because it found the proposed Third Amended Complaint simply repackaged the same red flag theories, and any supplementary allegations did not dissuade the court from its initial determination. We need not reach the issue of scienter since we find that both the Second and the proposed Third Amended Complaints fail to identify any material misrepresentation or omission necessary to plead a Section 10(b) violation or common law fraud under New York law.

Plaintiffs allege various statements in the FM Low Volatility Fund ("FM Fund") Offering Memorandum materially misrepresented (1) the FM Fund's investment goals, allocation and diversification, and strategies, and (2) the due diligence and monitoring that FMC Defendants would perform for the FM Fund's investments. Whether a statement is materially misleading is a "fact-specific" inquiry. *Basic Inc. v. Levinson*, 485 U.S. 224, 240 (1988). When examining offering materials, even if particular statements, "taken separately, were literally true," they are actionable if "taken together and in context, [they] would have misled a reasonable investor about the nature of the [investment]." *McMahan & Co. v. Wherehouse Entm't., Inc.*, 900 F.2d 576, 579 (2d Cir. 1990). As a general matter, however, "[c]ertain alleged misrepresentations in [an investment] offering are immaterial as a matter of law because it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002). Examining the allegations and factual circumstances here, we hold that the offering materials contained disclosures that counseled caution and clearly communicated what investments could be made and the risk that reliance on third-party investments and managers might undermine attempts to diversify. The factual allegations therefore do not state a valid claim for securities fraud or New York common law fraud.

### A. Misrepresentations Concerning Diversification & Strategy

Plaintiffs allege that the offering materials materially misled investors to believe that the FM Fund would be protected from over-concentration and would therefore achieve risk minimization. Plaintiffs assert this material misrepresentation by pointing primarily to the offering memorandum's statement that the FM Fund would "allocate its assets to no fewer than three Investments" and that "[n]o single Investment Vehicle will comprise more than 35% of the

5

FM Fund's Net Asset Value at the time of investment." Plaintiffs also point to the memorandum's list of various investment strategies that may be pursued. Plaintiffs assert that this 35% diversification clause and list of strategies misrepresented the FM Fund's investments because the defendants purportedly knew that three Investment Vehicles in which the FM Fund invested—Andover, Beacon, and Maxam—were Madoff feeder funds that gave the Fund around a 60% indirect exposure to Madoff's Ponzi scheme. The cautionary disclosures in the offering materials and Plaintiffs' factual allegations, however, make this claim untenable.

The Offering Memorandum specifically defines "Investment Vehicle" as private investment funds and hedge fund-of-funds such as those with which the Fund invested and further advises that "[t]he Fund will not control the individual portfolio decisions made by the Managers [of Investment Vehicles] or their choice of instruments and other investment decisions." That Memorandum also discloses "that the Fund's portfolio will not be significantly more diversified than the foregoing limitations would permit" and explicitly identifies an investment strategy identical to Madoff's then-advertised strategy as one that "will constitute a significant portion of the overall portfolio of the Investment Vehicles invested in by the Fund." Although no specific statement in the offering materials advises that the FM Fund would have an almost 60% indirect exposure to Madoff, we find that the materials, when read as a whole, sufficiently bespeak the need for caution such that no alleged misrepresentation or omission offered by Plaintiff "[would have affected] the total mix of information and thereby [misled] a reasonable investor regarding the nature of the securities offered." *See Halperin*, 295 F.3d at 357.

Moreover, the underlying factual allegations do not support Plaintiffs' claim that the FMC Defendants materially misled them. Plaintiffs do not truly assert that the FMC Defendants

6

engaged in an investment strategy inconsistent with their offering materials nor do they allege that the Fund invested in fewer than three Investments or that any single Investment Vehicle exceeded the 35% asset diversification threshold. Additionally, Plaintiffs allege in their proposed Third Amended Complaint that they were told by an agent of the FMC Defendants no later than October 2008—a mere three months after the Plaintiffs' full investment in the Fund— that the Fund's investments in Beacon, Andover, and Maxam gave it an approximately 60% indirect exposure to Madoff. Despite this disclosure, Plaintiffs did nothing to assert that they believed they had been misled—whether by making a demand for return of their capital, by seeking to redeem their investment in the Fund, or even by making a simple complaint to the FMC Defendants—until *after* Madoff was exposed as a fraud. Accordingly, given the cautionary language in the offering materials and the factual allegations advanced by Plaintiffs, we hold that both the Second and proposed Third Amended Complaints in this case have failed to state any valid claim of fraudulent misrepresentation as to investment diversification or strategy.

      B. **Misrepresentations Concerning Due Diligence**

      Plaintiffs also assert there were numerous misrepresentations concerning the FMC Defendants' duties to conduct initial due diligence and ongoing monitoring of the FM Fund's investments. Plaintiffs point to FMC Form ADV, in which the FMC Defendants promoted the fact that they undertake "initial and ongoing due diligence on all Third Party Managers and their investment vehicles." Even if we were to read this statement as a representation that the FMC Defendants would perform due diligence on underlying investments in the third-party investment vehicles, i.e. the direct investments with Madoff, Plaintiffs' allegations are insufficient to make out a claim for fraudulent misrepresentation.

Case 1:08-cv-11215-LBS-AJP Document 193 Filed 08/07/13 Page 7 of 11

7

Plaintiffs offer no supporting factual allegations that the FMC Defendants did not undertake some level of initial due diligence.  Plaintiffs instead point only to purported "red flags" that they allege would have or should have alerted the FMC Defendants to Madoff's fraud.  Such allegations are facially insufficient "to raise a right to relief above the speculative level," *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008), because, as the district court noted, "Madoff operated this fraud without being discovered and with only a handful of investors withdrawing their funds as a result of their suspicions." *Newman*, 748 F. Supp. 2d at 311.  Accordingly, we hold that such allegations do not meet the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 77z–1, 78u–4.  Indeed, they do not even meet the requirements of Rule 8(a)(2).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." (internal quotation marks and alterations omitted))

**II. State Law Claims**

Plaintiffs assert, on behalf of themselves and as a putative class, various other state law claims, both directly and derivatively, including negligent misrepresentation, breach of fiduciary duty, gross negligence and mismanagement, unjust enrichment, malpractice and professional negligence, and aiding and abetting breach of fiduciary duty.  Nominal Defendant FM Fund avers that all claims are derivative in nature, an argument in which all the Defendants join.  To determine whether Plaintiff can assert direct claims, we look to the law of the state of organization of the FM Fund limited partnership.  *See Halebian v. Berv*, 590 F.3d 195, 204 (2d Cir. 2009).  The FM Fund is a Delaware limited partnership, so we apply Delaware law.

8

Under Delaware law, to determine whether a claim is properly characterized as direct or derivative, we examine two questions: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). In so doing, we "must look to all the facts of the complaint and determine for [ourselves] whether a direct claim exists." *Dieterich v. Harrer*, 857 A.2d 1017, 1027 (Del. Ch. 2004).

Here, the complaint makes clear that all the state law claims are based on the alleged mismanagement of the FM Fund through the failure to conduct adequate due diligence and to discover and act upon red flags. Under *Tooley*, the claims presented here, none of which allege unique injury, can only be asserted derivatively. *See Kramer v. W. Pac. Indus., Inc.,* 546 A.2d 348, 353 (Del. 1988) ("A claim of mismanagement . . . represents a direct wrong to the corporation that is indirectly experienced by all shareholders."); *see also Litman v. Prudential-Bache Props, Inc.*, 611 A.2d 12, 15–16 (Del. Ch. 1992) (holding claim to be derivative where "[t]he gist of plaintiffs' complaint is that the general partners breached their fiduciary duties by inadequately investigating and monitoring investments and by placing their interests in fees above the interests of the limited partners.").[1]

Because the Plaintiffs are limited partners asserting derivative state law claims on behalf of Nominal Defendant FM Fund against the other Defendants, Plaintiffs must allege that they

---

[1] To the extent the claim for negligent misrepresentation against the FMC defendants alleges fraudulent inducement, such a claim alleges "injury other than that to the corporation" and may proceed directly. *See Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC*, 922 A.2d 1169, 1177 (Del Ch. 2006). However, such a claim fails to meet the requirement that "the alleged misrepresentation . . . be factual in nature and not promissory or relating to future events" or conduct. *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20–21 (2d Cir. 2000) (applying New York law); *see also Margrove Inc. v. Lincoln First Bank of Rochester*, 54 A.D.2d 1105, 1107 (N.Y. App. Div. 1976).

made a pre-suit demand or that such demand is otherwise excused. *See Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990); *see also* 6 Del. C. § 17–1001. Plaintiffs acknowledge that they made no pre-suit demand and instead argue that they sufficiently pleaded that demand would have been futile. We disagree. To determine the sufficiency of a complaint to withstand dismissal based on demand futility, we ask "(1) whether threshold presumptions of [general partner] disinterest or independence are rebutted by well-pleaded facts; and, if not, (2) whether the complaint pleads particularized facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment." *Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

On appeal, Plaintiffs primarily argue demand should be excused because the general partner, that is, the FMC Defendants, (1) faced a substantial threat of personal liability due to alleged breaches of fiduciary duty and (2) derived profit at the expense of the FM Fund by collecting management fees. To succeed on either theory, Plaintiffs must have pleaded particularized facts creating "a reasonable doubt that, as of the time the complaint is filed, the [general partner] could have properly exercised its independent and disinterested business judgment in responding to a demand." *Guttman v. Huang*, 823 A.2d 492, 501 (Del. Ch. 2003) (quoting *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993)). Both theories, however, are unavailing. "The mere threat of personal liability for approving a questioned transaction," absent a showing that such "approval cannot meet the test of business judgment," is insufficient to show demand futility. *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Similarly, Plaintiff's argument as to management fees is insufficient, for mere payments, absent some relevant fact that demonstrates excess or irregularity, are not enough to create a conflict of interest. *See, e.g.*, *Grobow v. Perot*, 526 A.2d

914, 923 (Del. Ch. 1987). With these principles in mind, we find the complaint devoid of any well-pleaded facts that would rebut the presumption that the general partner was disinterested and independent. Accordingly, Plaintiffs' derivative claims asserted against all Defendants fail. To the extent that any of Plaintiffs' derivative claims as to any of the FMC Defendants may survive regardless of demand futility, we hold that the Plaintiffs have failed adequately to demonstrate the egregious conduct necessary to render inoperable the exculpatory provisions in the Limited Partnership Agreement precluding recovery for any such claims.

Because we conclude that Plaintiffs' complaint was properly dismissed for failure to state a claim, we need not address Plaintiffs' remaining arguments. The judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

11